**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DANA-FARBER CANCER INSTITUTE, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 1:15-cv-13443-MLW |
| ONO PHARMACEUTICAL CO., LTD., TASUKU HONJO, E.R. SQUIBB & SONS, L.L.C., and BRISTOL-MYERS SQUIBB CO., | ) ) ) ) ) ) |
| Defendants. | ) |

**DANA-FARBER CANCER INSTITUTE, INC.'S OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

      A.     The Research Collaboration ................................................................................. 3

      B.     The Patents ........................................................................................................... 4

      C.     Ono ....................................................................................................................... 5

      D.     The Instant Lawsuit .............................................................................................. 5

ARGUMENT ............................................................................................................................. 6

      A.     Ono Is Not an Indispensable Party ...................................................................... 7

            1.     Ono Will Not Be Prejudiced by this Court's Rendering of Judgment in Its Absence ................................................................................... 8

            2.     Prejudice Could Be Avoided Altogether if Ono Chooses to Participate in this Case. .............................................................................. 10

            3.     This Court Can Render Adequate Judgment Because It Can Resolve the Controversy Between the Parties .................................................... 10

            4.     Dana-Farber Lacks an Adequate Remedy if this Case Is Dismissed ......... 12

CONCLUSION ....................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*A123 Sys. v. Hydro-Quebec,*
   626 F.3d 1213 (Fed. Cir. 2010) .................................................................................. 11

*Ali v. Carnegie Institute of Washington,*
   306 F.R.D. 20 (D.D.C. 2014) ....................................................................................... 9

*B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.,*
   516 F.3d 18 (1st Cir. 2008) .......................................................................................... 11

*Dainippon Screen Mfg. Co. v. CFMT, Inc.,*
   142 F.3d 1266 (Fed. Cir. 1998) ................................................................................. 8, 9

*Ethicon, Inc. v. United States Surgical Corp.,*
   135 F.3d 1456 (Fed. Cir. 1998) ................................................................................... 12

*FFOC Co. v. Invent A.G.,*
   882 F. Supp. 642 (E.D. Mich.) .................................................................................... 10

*Fina Tech., Inc. v. Ewen,,*
   265 F.3d 1325  (Fed. Cir. 2001) .................................................................................. 10

*Gray v. Evercore Restructuring L.L.C.,*
   544 F.3d 320 (1st Cir. 2008) ......................................................................................... 6

*Olympic Mills Corp. v. Rivera Siaca,*
   477 F.3d 1 (1st Cir. 2007) ........................................................................................... 10

*Picciotto v. Continental Casualty Co.,*
   512 F.3d 9 (1st Cir. 2008) ....................................................................................... 7, 11

*Rival Mfg. Co. v. Dazey Products Co.,*
   358 F. Supp. 91 (W.D. Mo. 1973) ............................................................................... 10

*United States v. Sabine Shell, Inc.,*
   674 F.2d 480 (5th Cir. 1982) ....................................................................................... 10

*United States v. San Juan Bay Marina,*
   239 F.3d 400 (1st Cir. 2001) ......................................................................................... 6

*Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E. V.,*
   881 F. Supp. 2d 151 (D. Mass. 2012) ........................................................................... 8

*Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E. V.*,
  734 F.3d 1315 (Fed. Cir. 2013) ............................................................................................ passim

**Statutory Authorities**

35 U.S.C. § 256 ................................................................................................................................ 10

35 U.S.C. § 256(b) ........................................................................................................................... 10

**Rules and Regulations**

Fed. R. Civ. P. 19 ..................................................................................................................... 1, 2, 10

Fed. R. Civ. P. 19(a) ........................................................................................................................... 6

Fed. R. Civ. P. 19(b) ....................................................................................................... 2, 6, 7, 9, 10, 12

L.R. 16.1(D)(1) ................................................................................................................................. 13

L.R. 26.1 ........................................................................................................................................... 13

## INTRODUCTION

Defendants' Rule 19 motion is the final piece of their three-prong strategy to thwart Dana-Farber's choice of forum and move its correction of inventorship action to Defendants' preferred forum, Delaware. As a preliminary matter, the Rule 19 motion is predicated on this Court's granting the motion of Ono Pharmaceutical Co., Ltd. ("Ono") to dismiss for lack of personal jurisdiction. For the reasons set forth in Dana-Farber's opposition, that motion should be denied. Because such denial will render this Rule 19 motion moot, the Court need not even consider it.

In any event, Defendants' Rule 19 motion defies controlling First Circuit law and common sense. There is no per se rule that every patent owner is an indispensable party, least of all in a case like this where the co-owner is a party and concedes personal jurisdiction. In their Rule 19 brief, Defendants say only that the four of them "may share some overlapping interest in the patents in suit." Dkt. No. 51. at 11. This grudging concession contrasts with their Transfer Brief, where they candidly acknowledge that each of the patents "has the same specification, the same named inventors, the same assignees, and the same licensees." Dkt. No. 51 at 5. In fact, Ono has exactly the same interest in the patents-in-suit as does defendant Tasuku Honjo ("Honjo"): they are co-owners, a fact never stated explicitly in Defendants' brief. And given that all four Defendants are jointly represented by Akin Gump and WilmerHale, it is fair to conclude that all four share an identical interest in defeating Dana-Farber's correction of inventorship claim.

This action seeks to recognize the inventive contributions of scientists Gordon Freeman ("Freeman") and Clive Wood ("Wood") as rightful joint inventors of five patents, U.S. Patent No. 7,595,048 (the "'048 patent"); U.S. No. 8,168,179 (the "'179 patent"); U.S. Patent No. 8,728,474 (the "'474 patent"); U.S. Patent No. 9,067,999 (the "'999 patent"); and U.S. Patent

No. 9,073,994 (the "'994 patent") (collectively, the "Patents").  Currently, the Patents omit both Freeman and Wood, naming only Honjo, Ono employee Shiro Shibayama, and two other Japanese colleagues as inventors.  Honjo and Ono are co-assignees of the Patents.  Ono granted BMS an exclusive license to the '048, '474, '999 and '994 patents, and a non-exclusive license to the '179 patent; Honjo licensed certain of his patent rights to Ono.  Dkt. No. 57 at 4.  As set forth in the Complaint, Dana-Farber's objective in pursuing this action is to confirm its ability to grant non-exclusive licenses to other companies interested in developing cancer immunotherapies directed to modulating the PD-1 pathway, in order to ensure broad patient access to the full range of cancer treatments claimed in the Patents.

      This Court should deny Defendants' Rule 19 motion as yet another misguided attack on Dana-Farber's choice of Massachusetts as the forum to determine correct inventorship of the Patents.  Defendants' brief cites no case for the proposition that all patent owners must be joined in an action that seeks solely to correct inventorship, particularly where the parties include the other co-owner (himself a named inventor) and the two exclusive licensees.

      To obtain dismissal under Rule 19(b), Defendants bear the burden of demonstrating that Ono is an indispensable party.  Defendants have fallen far short.  Honjo and BMS, jointly represented by Akin Gump and WilmerHale, can more than adequately protect the interest of Ono in this action, particularly where they have filed nearly identical answers contesting Dana-Farber's claim of incorrect inventorship.  Defendants' failure to demonstrate any prejudice to Ono, beyond a bald assertion that Ono's rights are not identical to the Defendants' rights, only confirms the absence of any reason the case cannot proceed even if Ono were dismissed as a co-defendant.

## FACTUAL BACKGROUND[1]

### A.     The Research Collaboration

Scientists at Dana-Farber, led by Freeman, conducted critical research in the 1990s that ultimately led to the development of an innovative means of treating cancer called "cancer immunotherapy." Freeman's work included the discovery of how certain protein ligands now known as PD-L1 and PD-L2 are carried on the surface of many normal human cells and help those cells avoid being attacked by the body's own immune system by interacting with a protein receptor expressed on the surface of T cells called PD-1. Dkt. No. 1, ¶ 3.

Freeman conducted this research as part of a collaboration that initially included Wood and other scientists at the Genetics Institute ("GI") in Cambridge. Wood then introduced Freeman to Honjo, with whom Wood already was collaborating. The three of them, together with other Japanese scientists at Kyoto University and Ono (including Ono employee Shiro Shibayama ("Shibayama")), met on multiple occasions at GI's facilities in Cambridge. The scientists shared biological materials, collaborated on experiments, exchanged ideas, and co-authored two seminal papers describing the PD-1 pathway and the role of the PD-L1 and PD-L2 ligands. In the course of his research, Freeman discovered that PD-L1 was highly expressed on certain tumor cells in addition to normal cells. This finding led to the suggestion in a paper co-authored by Freeman, Wood, and Honjo that blocking the PD-1 pathway could enhance the body's anti-tumor response and thereby provide a new treatment for cancer.

In 2014, various regulatory authorities, including in Japan and the United States, approved the marketing of an antibody therapeutic against PD-1, OPDIVO®, developed jointly

---

[1]   Dana-Farber hereby incorporates by reference its statement of facts from its Opposition to Ono's Motion to Dismiss for Lack of Personal Jurisdiction and its Opposition to Defendants' Motion to Transfer.

by Ono and BMS, as a treatment for certain cancer indications. Dkt. No. 1, ¶ 10; Dkt. No. 51 at 4.

### B. The Patents

In 2002, Honjo, Shibayama, and two other Japanese scientists at Kyoto University, Nagahiro Minato and Yoshiko Iwai, filed a Japanese Patent Application based on a disclosure stating "that the substances that could inhibit the inhibitory signals of PD-1, PD-L1, or PD-L2 hav[e] therapeutic potential for cancer or infection and completed the present invention." The application did not include Freeman or Wood as inventors. Dkt. No. 1, ¶ 38. Between September 29, 2009 and July 7, 2015, the Patents issued, all claiming priority to the July 3, 2002 Japanese Patent Application and a second Japanese Patent Application.

Ono and Honjo are co-owners of the Patents. Named inventors Honjo, Minato, Iwai, and Ono employee Shibayama assigned their interests in the Patents jointly to Honjo and Ono. Fiacco Decl., ¶¶ 14-18, Exs. N-R. Honjo also licensed certain of his patent rights to Ono. Dkt. No. 57 at 4. All parties are similarly situated with respect to each of the five Patents, as Defendants and Ono concede in their Transfer Brief: "The five Honjo Patents are in the same family, having derived from the same, originally filed, parent patent application. Each of them has the same specification, the same named inventors, the same assignees, and the same licensees." Dkt. No. 51 at 5.

In the present motion, where Defendants' purposes are different than in their motion to transfer, Defendants retreat from this unqualified concession, and instead acknowledge only that "Ono, BMS and Dr. Honjo *may* share *some* overlapping interest in the patents in suit," Dkt. No. 57 at 11 (emphases added). Their more candid statement in the Transfer Brief fairly captures the identical interests all four defendants share in the five Patents. Honjo licensed certain patent rights to Ono, and Ono granted BMS an exclusive license to the '048, '474, '999 and '994

4

patents, and a non-exclusive license to the '179 patent. Dkt. No. 57 at 4-5. All four Defendants undoubtedly share the same interest in maintaining the Patents' validity without expanding the universe of inventors, owners or licensees.

### C. Ono

As noted above, Ono and Honjo are co-owners of all five Patents. Dkt. No. 57 at 3. Ono employee Shibayama is a named joint inventor on each of the Patents and participated in the research meetings with Freeman and Wood in Cambridge in 1999 and 2000. Dkt. No. 1, ¶ 1; Dkt. No. 51 at 4. Ono was Honjo's partner in commercializing therapeutic antibodies to block the PD-1 pathway; *see, e.g.*, Dkt. No. 51 at 4 (acknowledging "a collaboration between Dr. Honjo's . . . laboratory groups at Kyoto University and Ono"); Fiacco Decl., ¶ 6, Ex. F (describing how "Honjo asked Ono Pharmaceutical, with which he had had personal ties since his days with his former mentor, to be a joint applicant [on the Japanese patent application that gave rise to the Patents]").

### D. The Instant Lawsuit

Dana-Farber filed this action to correct inventorship on September 25, 2015. All four Defendants are represented in this case by the same counsel, Akin Gump, who also represent all four of them as plaintiffs in three patent infringement actions (the "Delaware Cases") that involve only three of the five Patents: the '474 patent, the '999 patent, and the '994 patent. Counsel for Dana-Farber approached Akin Gump immediately after filing the Complaint last September to ask if they would be representing Defendants in this action and if so, whether they would accept service of process on behalf of Defendants. Fiacco Decl., ¶ 19, Ex. S. Akin Gump declined to accept service, so Dana-Farber proceeded to serve Honjo and BMS by hand. Dkt. Nos. 7, 8, 14. Dana-Farber also initiated service on Ono in Japan by means of the Hague Convention, a time-consuming process that cost upwards of $12,000. Dkt. Nos. 7, 8, 14; Fiacco

5

Decl., ¶¶ 3, 20, 21, Exs. T, U.  Nearly three months later, no less than seven Akin Gump lawyers entered appearances on behalf of Honjo and BMS, followed by appearances for Ono more than a month after that:  Dianne B. Elderkin, Steven D. Maslowski, Matthew A. Pearson, Melissa Gibson, Jason Weil, Emily C. Johnson, and Rachel J. Elsby.  Dkt Nos. 20-26, 41.  In addition, three lawyers from WilmerHale have appeared on behalf of all four Defendants.  Dkt. Nos. 10, 11, 15, 16, 19, 41.  On January 22, 2016, some four months after being asked, Akin Gump reversed course and agreed to accept service of process on behalf of Ono.  Dkt. No. 37.

**ARGUMENT**

On a motion for judgment on the pleadings based on an affirmative defense, "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (internal quotation omitted).  The court must "view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Id.*

First Circuit law applies to the issue of joinder in this case.  *See Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 734 F.3d 1315, 1327 (Fed. Cir. 2013).  The First Circuit applies "a two-step inquiry" to determine whether to dismiss a case for failure to join an indispensable party: (1) is the party required to be joined under Rule 19(a), and (2) is the party "an indispensable party under Rule 19(b)"?  *Id.* at 1325 (Fed. Cir. 2013) (citing *United States v. San Juan Bay Marina*, 239 F.3d 400, 405 (1st Cir. 2001)).

As noted above, since Dana-Farber did join Ono as a defendant when it filed its Complaint and does not object to Ono's participation as a party, there is no need for the Court to take up the issue of joinder under Rule 19(a).  The only issue before the Court is whether, if the Court concludes it lacks jurisdiction over Ono, the case should proceed in Ono's absence or

instead be dismissed. In short, drawing all reasonable inferences in favor of Dana-Farber as the non-moving party, have Defendants met their burden of establishing that Ono is an indispensable party under Rule 19(b)?

### A. Ono Is Not an Indispensable Party

Even if the Court were to conclude that it lacks jurisdiction over Ono, Rule 19(b) would not require dismissal. A party is not indispensable if the case can proceed "in equity and good conscience" in that party's absence. *Picciotto v. Cont'l Casualty Co.*, 512 F.3d 9, 18 (1st Cir. 2008). Rule 19(b) sets out four non-exclusive factors that guide this determination:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). This equitable balancing of factors applies as fully to absent patent owners as it does to all other parties. Contrary to the premise underlying Defendants' motion, and as the Federal Circuit has squarely held, there is no "per se rule that patent owners are automatically indispensable parties—there is no patent-specific exception to Rule 19(b)." *Univ. of Utah*, 734 F.3d at 1326. As shown below, none of the Rule 19(b) factors favors Defendants. In equity and good conscience, this case should be allowed to proceed.

### 1. Ono Will Not Be Prejudiced by this Court's Rendering of Judgment in Its Absence

Ono's interests are fully and well represented by the other Defendants, so there will be no prejudice to it if this case proceeds to judgment without Ono as a party. Ono's interest in this case is the same as the interest of the other Defendants: preventing Dana-Farber from proving that Freeman and Wood are joint inventors of the Patents. Like the defendant and the dispensable non-party in *Dainippon Screen Mfg. Co. v. CFMT, Inc*., 142 F.3d 1266, 1272 (Fed. Cir. 1998), Defendants and Ono "share the common goal" of defeating the correction of inventorship claims "and have jointly sought legal assistance in furtherance of that goal."

In this case, Defendants and Ono are represented by two teams from large, experienced and nationally recognized litigation firms. The Akin Gump team alone numbers no less than seven attorneys. They will make exactly the same arguments on behalf of Honjo and BMS that Ono would make about inventorship of the Patents, and the addition of Ono as a co-defendant "would not change the course of the action in the slightest degree (quotation omitted)." *Id. See also Univ. of Utah*, 734 F.3d at 1327 (joint representation supports finding that party is not indispensable based on lack of prejudice). As Judge Saris noted below in *University of Utah*, "[a]ll defendants are also represented by the same counsel, one of the leading IP law firms in the United States, and there is no apparent conflict of interest." *Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 881 F. Supp. 2d 151, 156 (D. Mass. 2012). Moreover, in this case, Defendants' and Ono's joint legal effort, led by Akin Gump, encompasses not only this case but also the Delaware Cases. Because Akin Gump is already representing Ono in Delaware as well as in this case, it has access to all of Ono's documents and witnesses, including Shibayama. This joint representation is much more extensive than that

considered in *Dainippon* or *University of Utah*, and provides even more proof that Ono is not an indispensable party.

Defendants assert that Ono's interests are different, but so state with no support from the pleadings and no explanation in their brief of exactly how Ono's interests in the outcome of this case diverge from Defendants' interests. In their respective Amended Answers, Defendants claim that Ono is an indispensable party simply because it "is a co-owner of the patents." Dkt. No. 47-1 at ¶ 76; Dkt. No. 47-2 at ¶ 76. As noted above, this linchpin of their Rule 19(b) motion was definitively rejected by the Federal Circuit when it held in *University of Utah*—a correction of inventorship case in which one co-owner of the patents, the University of Massachusetts, truly could not be joined due to sovereign immunity—that there is no "per se rule that patent owners are automatically indispensable parties." 734 F.3d at 1326 (applying First Circuit law). On the contrary, the court there affirmed Judge Saris's holding that UMass was not an indispensable party.

Defendants' attempt to suggest that the Defendants' interests merely "overlap"—despite the fact that Ono and Honjo are co-owners of the Patents, and BMS is the exclusive licensee of all the Patents except the '179 patent—is a misguided attempt to seek cover from *Ali v. Carnegie Institute of Washington*, 306 F.R.D. 20 (D.D.C. 2014), a case with markedly different facts. In *Ali*, the plaintiff alleged a contractual relationship between it and the absent University of Massachusetts, and UMass was the "only" entity whose "financial liability [was] at stake" *Id.* at 27-29. *Ali* is inapposite here, particularly when Defendants chose not to provide any factual support for their bald assertion that their interests and Ono's merely "overlap."

### 2. Prejudice Could Be Avoided Altogether if Ono Chooses to Participate in this Case.

If Ono truly believed its interests were threatened despite the participation of Honjo, BMS, and Ono counsel Akin Gump and WilmerHale, it could simply choose to remain in this case, consenting to personal jurisdiction just as did Honjo. *Cf. United States v. Sabine Shell, Inc.*, 674 F.2d 480, 483 (5th Cir. 1982) (in Rule 19 analysis, party's failure to intervene indicates it did not believe its interests would be prejudiced).

Indeed, the notice and opportunity to be heard provided by 35 U.S.C. § 256 gives even non-parties a chance to testify. *See FFOC Co. v. Invent A.G.*, 882 F. Supp. 642, 650 (E.D. Mich. 1994) (stating non-party inventors would be given "an opportunity to testify"); *Rival Mfg. Co. v. Dazey Prods. Co.*, 358 F. Supp. 91, 93 (W.D. Mo. 1973) (accepting affidavits and deposition testimony of non-party inventors and non-party corporate assignee who had reassigned its interests in the patent); *see also Fina Tech., Inc. v. Ewen*, 265 F.3d 1325, 1328 (Fed. Cir. 2001) (indicating that § 256 requires "notice and an opportunity to be heard"). Defendants offer no explanation of why the opportunity to be heard afforded by § 256 is insufficient to protect Ono's interests.

### 3. This Court Can Render Adequate Judgment Because It Can Resolve the Controversy Between the Parties

This Court can provide a "complete, consistent, and efficient settlement" of the controversy in this case; that itself constitutes an "adequate judgment" under Rule 19(b). *Olympic Mills Corp. v. Rivera Siaca*, 477 F.3d 1, 9 (1st Cir. 2007). The only controversy between the parties to this case concerns inventorship; if this Court renders judgment on that issue, the dispute will be fully resolved. Under § 256(b) the remedy is an order to the Director of the United States Patent and Trademark Office to correct the inventorship on the patent; the

10

presence of Ono as a party is unnecessary to the Court's affording of that remedy. *Utah*, 734 F.3d at 1328.

Defendants attempt to muddy the waters by suggesting that the "only way" to obtain complete resolution is to merge this case with Defendants' patent infringement dispute with Merck. Dkt. No. 57 at 12. Not only is Merck a non-party that no one contends is necessary to this correction of inventorship action, but the Delaware litigation is directed to the factually and legally distinct question of whether Merck's product infringes Defendants' patents. The cases Defendants cite do not help their argument. Instead, Defendants' citations are concerned with situations where the parties to the lawsuit and the absent party were engaged in duplicative litigation involving identical issues—not litigation between one side and some other wholly uninvolved party. *E.g.*, *B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 26 (1st Cir. 2008) (absent party could create inconsistent judgments on same issue); *Picciotto v. Continental Casualty Co.*, 512 F.3d 9, 19 (1st Cir. 2008) (absent party indispensable because plaintiff had already brought claims of "striking similarity" against absent party in concurrent litigation). Defendants' wholly separate infringement actions against Merck do not prevent this Court from resolving the inventorship dispute between Dana-Farber and Defendants.[2]

Defendants' speculation that there could be inconsistent claim construction rulings in the unrelated Delaware infringement actions likewise has no merit. Dkt. No. 57 at 12. They have

---

[2] Defendants' reliance on *A123 Sys. v. Hydro-Quebec*, 626 F.3d 1213 (Fed. Cir. 2010), is similarly misplaced. As Defendants note, it involved the exercise of the court's "broad discretion" to decline jurisdiction in an action seeking a declaratory judgment of non-infringement and invalidity, and the ***only*** defendant was a licensee that held only a field of use license. *Id.* at 1220-22. In that case, the court noted that there could potentially be conflicts of interest concerning the patent owner's interest in subject matter not licensed to the field-of-use licensee. *Id.* at 1221. Dana-Farber's inventorship claims, by contrast, have joined a co-owner of all the Patents and an exclusive licensee of four of the Patents.

11

not identified any claim construction issue that would affect this Court's assessment of inventorship. Nor could Dana-Farber participate fairly in claim construction in the Delaware Cases, as the parties there have already submitted their Joint Claim Chart, without any input from Dana-Farber, and a claim construction hearing is scheduled for May 10, 2016. *See* Dkt. No. 51 at 15; Fiacco Decl., ¶ 22, Ex. V.

Defendants' claim that efficient resolution of the controversy favors dismissal confuses the third Rule 19(b) factor and is unpersuasive, for reasons that Dana-Farber has presented in detail in its opposition to Defendants' transfer motion. There is no risk of inconsistent rulings on inventorship when, as Defendants concede, inventorship is not currently a defense in the Delaware Cases but solely a subject of discovery requests. Dkt. No. 51 at 6. If the issue of inventorship were later introduced in the Delaware case—a matter of speculation by Defendants—and Defendants truly were concerned about inconsistency or judicial efficiency, the solution lies within their own power: all they have to do is request a stay of their infringement actions in Delaware pending this Court's decision on inventorship. If anything, conservation of judicial resources favors first resolving the inventorship claims here, because if Dana-Farber prevails and becomes a co-owner of the Patents, the Delaware Cases will be moot—they will necessarily be dismissed for lack of standing because "[a]n action for infringement must join as plaintiffs all co-owners." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998).

### 4. Dana-Farber Lacks an Adequate Remedy if this Case Is Dismissed

If this case is dismissed, Dana-Farber would not have an adequate remedy. As made clear in Dana-Farber's Opposition to Defendants' Motion to Transfer, the District of Delaware is not a "readily-available forum." Dismissing this case on the grounds that Dana-Farber can refile in Delaware would deprive Dana-Farber of its choice of forum, and force Dana-Farber to litigate

12

in an inconvenient forum that may impair its ability fairly to litigate this case. For example, no potential witnesses reside in Delaware, Fiacco Decl., ¶ 2, making the forum inconvenient for all witnesses and making it impossible for Dana-Farber to subpoena witnesses for trial.

In addition, Defendants have made clear their hope of moving the case to Delaware is tactical: they would then try to compel Dana-Farber to adhere to the discovery schedule they negotiated with Merck more than a year ago, forcing Dana-Farber to conduct the key inventor depositions in a matter of weeks. *See* Dkt. No. 51 at 11-16. Defendants propose this with a straight face even as they refuse to produce any documents or answer any interrogatories that Dana-Farber will need before it can reasonably proceed with the depositions. Fiacco Decl., ¶¶ 8, 23, Exs. H, W. An outcome aimed at imposing an unrealistic and unfair discovery schedule on Dana-Farber, while simultaneously rewarding Defendants for their gamesmanship, delay, and obstructionist tactics, cannot be fairly be characterized as "adequate."

The remainder of Defendants' kitchen-sink attempts to paint Delaware as a more convenient forum are without foundation. The Delaware Cases were not "first-filed" on the issue of inventorship. Dkt. No. 57 at 13. Merck's discovery requests concerning discovery came only months after Dana-Farber filed its Complaint. Dkt. No. 52, Ex. 20. Nor can Defendants credibly claim that Dana-Farber has tried to apply Delaware rules in this case. Dkt. No. 14. Dana-Farber merely pointed out, in discussing a proposed discovery plan with Defendants' counsel, that Defendants had agreed to certain discovery limitations in Delaware in response to their objection to similar discovery limitations that Dana-Farber had proposed in this case. Negotiation of discovery events and limitations in a proposed discovery plan is typical and entirely consistent with the Local Rules for the District of Massachusetts. *See* L.R. 16.1(D)(1)

13

(parties to propose a joint discovery plan), L.R. 26.1 (default discovery limitations can be altered by order of judicial officer).

## CONCLUSION

For all the above reasons, in the event this Court grants Ono's motion to dismiss for lack of personal jurisdiction, Dana-Farber respectfully requests that the Court deny Defendants' motion to dismiss the case for failure to join an indispensable party.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(D), Dana-Farber believes that oral argument may assist the court and respectfully requests to be heard.

DANA-FARBER CANCER INSTITUTE, INC.

By its attorneys,

/s/ Barbara A. Fiacco
Donald R. Ware (BBO No. 516260)
Barbara A. Fiacco (BBO No. 633618)
Sarah S. Burg (BBO No. 683245)
Michael Hoven (BBO No. 688593)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000 (telephone)
(617) 832-7000 (facsimile)

Dated: February 24, 2016

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document, filed through the CM/ECF system, will be sent electronically to the registered participants of record as identified on the Notice of Electronic Filing on February 24, 2016.

                      /s/   Barbara A. Fiacco
                      Barbara A. Fiacco