# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DANA-FARBER CANCER INSTITUTE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:15-cv-13443-MLW |
| ONO PHARMACEUTICAL CO., LTD., TASUKU HONJO, E.R. SQUIBB & SONS, L.L.C., and BRISTOL-MYERS SQUIBB CO., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT ONO PHARMACEUTICAL CO., LTD'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 3

        A.      Plaintiff Dana-Farber ...............................................................................3

        B.      Genetics Institute ......................................................................................4

        C.      Defendant Ono ..........................................................................................4

        D.      The Underlying Collaboration ...................................................................5

        E.      The Patents At Issue..................................................................................9

III.    ARGUMENT ...................................................................................................... 9

        A.      The Legal Standard .................................................................................10

        B.      There Is Specific Jurisdiction Over Ono.................................................12

                1.      Dana-Farber's Claim Arises Out Of Ono's Purposeful Contacts
                        With Massachusetts. ....................................................................12

                2.      Exercising Jurisdiction Over Ono Is Reasonable......................14

                3.      Ono Should Not Be Permitted To Cure Its Defective Motion
                        Through A Reply Brief. ................................................................17

        C.      In The Alternative, The Court Should Grant Dana-Farber Jurisdictional
                Discovery Of Ono. ..................................................................................17

IV.     CONCLUSION.................................................................................................. 18

CERTIFICATE OF SERVICE ................................................................................. 19

**INTRODUCTION**

Only by omitting relevant jurisdictional facts and hiding behind a non-existent pleading requirement is defendant Ono Pharmaceutical Co. Ltd. ("Ono") able to assert that this Court lacks personal jurisdiction over it.  In fact, during the relevant period, Ono engaged in an ongoing research collaboration with Genetics Institute ("GI") and participated in critical face-to-face meetings in Massachusetts with scientists at GI and Dana-Farber Cancer Institute ("Dana-Farber") that led to the patented inventions.  It was in the course of these meetings, attended by Ono employee (and named inventor) Shiro Shibayama, that Dana-Farber's Gordon Freeman and GI's Clive Wood disclosed to Ono and another named inventor, Tasuku Honjo, their data, information, and ideas about PD-L1 and the PD-1 pathway.  These facts are uncontroverted, yet never mentioned in Ono's brief.  Ono's attempt to escape having to litigate inventorship in Massachusetts on jurisdictional grounds is baseless.

Dana-Farber's action to correct inventorship concerns five patents[1] (the "Patents") co-owned by Ono and Honjo that, in Defendants' words, "relate to revolutionary and life-saving methods for treating cancer using antibodies that target a protein called PD-1 (programmed cell death 1) and its ligands PD-L1 and PD-L2."[2]  The Patents currently name only Honjo, two of his Kyoto University colleagues, and Ono employee Shibayama as inventors.

---

[1] The five patents are U.S. Patent No. 7,595,048 (the "'048 patent"); U.S. No. 8,168,179 (the "'179 patent"); U.S. Patent No. 8,728,474 (the "'474 patent"); U.S. Patent No. 9,067,999 (the "'999 patent"); and U.S. Patent No. 9,073,994 (the "'994 patent") (collectively, the "Patents"), which all relate to a new approach to treating cancer.  As noted above, Dr. Tasuku Honjo, and his colleagues, Nagahiro Minato, Yoshiko Iwai, and Dr. Shiro Shibayama—an Ono employee—are named as inventors on the Patents.  The Patents are co-assigned to Honjo and Ono.

[2] Memorandum in Support of Defendants Ono Pharmaceutical Co., Ltd., Tasuku Honjo, E. R. Squibb & Sons, L.L.C. and Bristol-Myers Squibb, Co.'s Motion to Transfer (hereafter, "Transfer Motion" at 4.

The allegations in the Complaint establish that the inventorship dispute originates in Massachusetts:  the PD-L1 and PD-L2 ligands, as well as their interaction with PD-1 (the "PD-1 pathway") were discovered in Massachusetts by scientists at Dana-Farber and Genetics Institute, and these scientists shared their discoveries with Honjo and Ono at private meetings that took place at GI's facilities in Cambridge in 1999 and 2000.  *See* Dkt. No. 1, ¶¶ 21-37.  Despite these allegations and despite Honjo's admission that this Court has jurisdiction over him—and without setting forth any affirmative facts relevant to jurisdiction—Ono seeks dismissal under Rule 12(b)(2).  Ono's motion is one of three coordinated motions filed by Defendants, all with the admitted goal of moving this case out of Massachusetts to Delaware, a state that has no connection whatsoever with Dana-Farber or this inventorship dispute.

Ignoring that fact that Massachusetts is the undeniable epicenter of the dispute, Ono rests its argument entirely on an incorrect test for assessing personal jurisdiction, repeatedly objecting that Dana-Farber has failed to ***plead specific facts*** to establish jurisdiction over Ono.  Ono's argument is founded on a fundamental legal error.  It is black-letter law that personal jurisdiction need not be pleaded with specificity; the plaintiff must simply make out a prima facie case at the pleadings stage.  As shown below, the allegations in Dana-Farber's Complaint and the additional facts contained in the declarations and exhibits accompanying this memorandum set forth in detail how this action arises out of and relates to conduct in this forum, including purposeful conduct by Ono directed to Massachusetts.

Ono's attempts to evade this Court's proper exercise of jurisdiction over it should be rejected.  Ono has not cited ***any*** evidence to support its bald assertion that the Court lacks personal jurisdiction over it in connection with this dispute.  Should this Court not deny Ono's

motion on the record before it, Dana-Farber requests jurisdictional discovery from Ono to further demonstrate Ono's contacts with Massachusetts.

## FACTUAL BACKGROUND[3]

### A.    Plaintiff Dana-Farber

Dana-Farber is a world-renowned leader in cancer research and treatment.  Declaration of Barbara Fiacco ("Fiacco Decl."), ¶ 4, Ex. 2. It seeks to provide expert, compassionate care to children and adults with cancer while advancing the understanding, diagnosis, treatment, cure, and prevention of cancer and related diseases. Fiacco Decl., ¶ 4, Ex. 2.  It is also the assignee of over 400 patents.  Declaration of Richard S. Boskey, Esq. ("Boskey Decl."), ¶ 4. Headquartered in Massachusetts, Dana-Farber employs over 4,500 people at its Longwood Medical Area campus in Boston.[4]  Boskey Decl., ¶ 2.

Critical research took place at Dana-Farber in Boston in the 1990s, led by Freeman.  Dkt. No. 1, ¶ 3.  Freeman is a researcher in the Department of Medical Oncology at Dana-Farber and Professor of Medicine at Harvard Medical School in Boston.  Dkt. No. 1, ¶¶ 3, 11.  Freeman discovered that a protein ligand now known as PD-L1 is carried on the surface of many normal human cells and helps those cells avoid being attacked by the body's own T cells.  Dkt. No. 1, ¶ 3.  Freeman also discovered not only that a variety of normal cells express PD-L1but also that various types of cancer cells also highly express PD-L1 on their surfaces.  Dkt. No. 1, ¶ 5.

---

[3] Dana-Farber hereby incorporates by reference its statement of facts from its Opposition to Defendants' Motion to Transfer and its Opposition to Defendants' Motion to Dismiss for Failure to Join an Indispensable Party.

[4] All of Dana-Farber's locations are in Massachusetts other than one satellite location in Londonderry, New Hampshire. Boskey Decl., ¶ 2.

### B.      Genetics Institute

Wood was an employee of Genetics Institute, a biotechnology company headquartered in Cambridge that is now part of Pfizer.  Dkt. No. 1, ¶ 9.  Founded in Massachusetts in 1980, GI focused on the discovery, development, and commercialization of biopharmaceutical products, using recombinant DNA and other technologies, for the treatment of a wide range of diseases and conditions, including anemia, hemophilia, and cancer.  Fiacco Decl., ¶ 5, Ex. E at 3.  During the 1990s, GI employed approximately 1,000 people. Fiacco Decl., ¶ 5, Ex. E at 4.

### C.      Defendant Ono

Ono is a corporation organized under the laws of Japan.  Dkt. No. 1, ¶ 13; Dkt. No. 54 at 2. Ono is a co-assignee of the Patents along with Honjo.  Ono employee Shibayama is a named co-inventor on the Patents.  Dkt. No. 1, ¶ 1; Dkt. No. 51 at 4.  Ono was Honjo's commercialization partner to develop research that came out of Honjo's laboratory at Kyoto University, and to that end, in this case Honjo and his Kyoto colleagues, Minato and Iwai, assigned their patent rights to both Ono and Honjo, as did Shibayama.  *See, e.g.*, Fiacco Decl., ¶¶ 14-18, Exs. N-R; Dkt. No. 51 at 4 (acknowledging "a collaboration between Dr. Honjo's . . . laboratory groups at Kyoto University and Ono"); Fiacco Decl., ¶ 6, Ex. F. (describing how "Honjo asked Ono Pharmaceutical, with which he had had personal ties since his days with his former mentor, to be a joint applicant [on the Japanese patent application that gave rise to the Patents]").  Defendants also represent that Honjo licensed certain of his patent rights to Ono. Dkt. No. 57 at 4.

Ono and BMS together co-developed OPDIVO®, a therapeutic  antibody directed against PD-1, approved in 2014 by both the Japanese and United States regulatory authorities for the treatment of advanced melanoma.  Dkt. No. 1, ¶ 10; Dkt. No. 51 at 4.  It has since been approved for two other indications, non-small cell lung cancer and renal cell carcinoma.  Dkt. No. 51 at 4.

Ono granted BMS an exclusive license to the '048, '474, '999 and '994 patents, and a non-exclusive license to the '179 patent, which cover OPDIVO®.  Dkt. No. 57 at 4.  Ono has been a collaborator on numerous clinical trials sponsored by BMS concerning OPDIVO®, including at study locations in Massachusetts.  Fiacco Decl., ¶ 7, Ex. G.

As discussed below, Ono participated in the research collaboration with Dana-Farber and GI that gave rise to this lawsuit, and Ono and its employee Shibayama[5] were involved in critical meetings in Massachusetts.  Ono concedes in its Transfer Brief that Shibayama is its employee (Dkt. No. 51 at 4) and that Ono had a collaboration with Honjo relating to the inventions claimed in the Patents (Dkt. No. 51 at 4), but it makes no mention of those facts in its motion to dismiss for lack of personal jurisdiction.  Nor does Ono acknowledge that it had a continuing drug discovery collaboration agreement with GI that began in 1994.  Fiacco Decl., ¶ 9, Ex. I.  Through this decade-long collaboration, Ono claims to have obtained over 420 drug target genes.  Fiacco Decl., ¶¶ 9, 10, Exs. I, J.

Ono's business relationships with Massachusetts have been extensive.  Indeed, Ono was registered to do business in Massachusetts from 1995 until 1998.  Fiacco Decl., ¶ 11, Ex. K.  In 1998, Ono closed its local offices in the United States and instead formed a U.S. subsidiary, Ono Pharma USA, Inc.  Fiacco Decl., ¶ 12, Ex. L.

D.      **The Research Collaboration**

The collaborative research that led to this correction of inventorship action began in Massachusetts in the late 1990s.  Dkt. No. 1, ¶¶ 21-37.  After Freeman discovered the novel

---

[5] Dana-Farber has propounded discovery requests to Honjo concerning the conception and reduction to practice of the named inventors of the Patents, including Shibayama.  On February 11, 2016, Honjo responded by objecting to the interrogatories in their entirety and refused to provide any information.  Fiacco Decl., ¶ 8, Ex. H.

protein now known as PD-L1, he transferred cDNA encoding PD-L1 to Wood at GI for further study. Dkt. No. 1, ¶ 23.  In the meantime, Wood had been conducting studies on the PD-1 protein at GI.  Dkt. No. 1, ¶ 24.  Wood was trying to identify molecules that would interact with PD-1 in order to better understand its biological function.  Dkt. No. 1, ¶ 24.  He obtained cDNA encoding the PD-1 protein from Honjo.  Wood's experiments indicated that Freeman's PD-L1 molecule bound to PD-1 on the surface of T cells.  Dkt. No. 1, ¶ 3.  Dkt. No. 1, ¶ 24.

On August 23, 1999, Freeman and Wood filed a provisional patent application describing their discovery that PD-1 is a receptor for the PD-L1 ligand, and that the interaction between PD-1 and PD-L1 results in modulation of the immune response.  When PD-L1 on the surface of a normal cell binds to PD-1 on a T cell, the effect is to inhibit the T cells from launching an immune response against the normal cell, providing a critical checkpoint against harmful autoimmune disease.  Dkt. No. 1, ¶ 3.  As noted above, Freeman also discovered that certain kinds of cancer cells carry PD-L1 proteins on their surfaces.  The presence of PD-L1 allows the cancer cells to interact with PD-1 on T cells and use the same PD-1 pathway used by normal cells to escape attack by the body's immune system.  Dkt. No. 1, ¶ 5.

Ono became involved early on in the collaboration.  Wood introduced Freeman to Honjo and arranged a meeting among Dana-Farber, GI, and Ono at GI's offices in Cambridge on October 25, 1999.  Dkt. No. 1, ¶¶ 27-28; Declaration of Gordon J. Freeman, Esq. ("Freeman Decl."), ¶¶ 2, 5, Ex. A.  Honjo concedes that this meeting took place.  Dkt. No. 47-1, ¶ 27. Honjo traveled to Massachusetts from Japan with several colleagues from Kyoto University and Ono, including Shibayama. Freeman Decl., ¶ 5, Ex. A. The meeting agenda was titled "GI/Ono Meeting" underscoring Ono's involvement in the Cambridge meeting.  Freeman Decl., ¶ 5, Ex. A.

At the meeting, Freeman, Wood, and Honjo shared their research.  Honjo admits that this discussion of PD-1 and PD-L1 took place.  Dkt. No. 47-1, ¶ 29.  Freeman made a presentation at the meeting about his work on PD-L1.  Shibayama was at the meeting and presented on other work later that day.  Freeman Decl., ¶ 5, Ex. A.  At the time of the meeting, Freeman and Wood's work showing binding of PD-L1 to PD-1 had not yet been published, and Honjo learned of this discovery for the first time from his interactions with Wood and Freeman. Dkt. No. 1, ¶ 28.

Immediately following the Cambridge meeting, Freeman agreed to send Honjo the cDNA encoding PD-L1 as well as cells engineered to produce PD-L1 protein.  Dkt. No. 1, ¶ 32.  The scientists also agreed that Honjo would allow Freeman to have access to the PD-1 antibodies made by Honjo (which Honjo had previously sent to Wood) and a PD-1-immunglobulin fusion protein made by Wood using Honjo's PD-1 cDNA.  Dkt. No. 1, ¶ 32.  Confirming this agreement, on November 2, 1999, Honjo executed a Dana-Farber Material Transfer Agreement for the transfer to Honjo of murine and human cDNA encoding PD-L1 and related know-how.  Dkt. No. 1, ¶ 32; Dkt. No. 47-1, ¶ 32.  The agreement identified the subject of the shared materials as "collaborative research."  Dkt. No. 1, ¶ 32.

As part of their collaboration, the scientists conducted experiments to block the PD-1 pathway; shared their data; and co-authored a scientific paper reporting their discoveries.  Dkt. No. 1, ¶¶ 33-34; Dkt. No. 47-1, ¶¶ 33-34.  This ongoing collaboration led to another Dana-Farber/GI/Ono meeting in the fall of  2000 at GI's offices in Cambridge, where the scientists again shared their ideas and research.  Dkt. No. 1, ¶ 36; Freeman Decl., ¶¶ 6-8, Exs. B, C.  Honjo also admits that this meeting took place.  Dkt. No. 47-1, ¶ 36.  Ono's active participation in the

meeting is demonstrated by a slide deck for the "Honjo/Genetics Institute/Ono Scientific Meeting."  Ono's logo appears front and center:



Honjo / Genetics Institute / Ono

## Scientific Meeting

**September 8, 2000**

**Minase Research Institute**
**Ono Pharmaceutical Co., Ltd.**

Freeman Decl., ¶ 7, Ex. B. The Minase Research Institute listed on the slide deck is the Ono laboratory where Shibayama is employed.  Fiacco Decl., ¶ 13, Ex. M.  Shibayama was present at the Cambridge meeting in 2000 and also made a presentation.  Freeman Decl., ¶ 8, Ex. C.  In October 2000, Honjo executed another Material Transfer Agreement with Dana-Farber, under which Dana-Farber provided Honjo with anti-human PD-L1 antibody to use in Honjo's continuing experiments.  Dkt. No. 1, ¶ 36.

In 2000, Freeman conducted further research at Dana-Farber showing that PD-L1 is highly expressed in a variety of tumor cells, and he shared his data with Honjo and Wood.  Dkt. No. 1, ¶ 37.  Freeman's research culminated in a second paper they co-authored, which disclosed Freeman's idea that "blocking the PD-1 pathway may enhance anti-tumor immunity."  Dkt. No. 1, ¶ 37; Dkt. No. 47-1, ¶ 37.

### E.     The Patents At Issue

Despite this extensive research collaboration among Honjo, Ono, Dana-Farber, and GI, Honjo, Shibayama, and two of Honjo's Kyoto colleagues, Nagahiro Minato and Yoshiko Iwai unilaterally filed their own Japanese Patent Application on July 3, 2002 reporting "that the substances that could inhibit the inhibitory signals of PD-1, PD-L1, or PD-L2 hav[e] therapeutic potential for cancer or infection and completed the present invention."  Dkt. No. 1, ¶ 38. The patent application omitted both Freeman and Wood as inventors, notwithstanding their significant inventive contributions to important aspects and features of the inventions claimed in the Patents.  Dkt. No. 1, ¶ 38.  Between September 29, 2009 and July 7, 2015, the five Patents issued, all claiming priority to the July 3, 2002 Japanese Patent Application and a second Japanese Patent Application filed on February 6, 2003.  Honjo, Minato, Iwai, and Shibayama co-assigned their interests in the Patents to Honjo and Ono, Honjo's commercialization partner. Dkt. No. 57 at 4; Fiacco Decl., ¶¶ 14-18, Exs. N-R.

This action was filed in September 2015 to correct inventorship of the five Patents by adding Freeman and Wood as joint inventors.  Through this action, Dana-Farber seeks to confirm its ability to grant non-exclusive licenses to companies interested in developing cancer immunotherapies directed to the PD-1/PD-L1 pathway, in order to ensure broad patient access to the cancer treatments claimed in the Patents.  Dkt. No. 1, ¶ 56.

## ARGUMENT

As a threshold matter, Ono's brief misstates the applicable legal standard.  Ono bases its entire motion on the erroneous proposition that Dana-Farber was required to ***plead specific facts*** establishing jurisdiction over Ono in its Complaint.  But personal jurisdiction need not be pled with specificity.  Contrary to Ono's repeated suggestions, "parties may satisfy federal pleading standards by alleging personal jurisdiction generally, without asserting a specific basis for the

court's personal jurisdiction over a defendant." *Merial Ltd. v. Cipla Ltd*., 681 F.3d 1283, 1296 (Fed. Cir. 2012); *see also* 4 Charles Alan Wright et al., *Federal Practice and Procedure* § 1067.6 (3d ed. 2007) (indicating that "under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants").[6]  Ono's procedural argument is a red herring, designed to distract the Court in the hope Ono might obtain dismissal without ever having to disclose to the Court or acknowledge the relevant jurisdictional facts, of which it is well aware.

### A.      The Legal Standard For Exercising Personal Jurisdiction

Federal Circuit law governs the question of personal jurisdiction, because an inventorship action is "intimately related to substantive patent laws." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1292 (Fed. Cir. 2009).  At this stage  of the proceedings, Dana-Farber need only make a "prima facie showing" that Ono is subject to personal jurisdiction.  Under this standard, the Court must accept the uncontroverted allegations in Dana-Farber's Complaint as true and resolve any factual conflicts in Dana-Farber's favor. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd*., 552 F.3d 1324, 1328-29 (Fed. Cir. 2008). *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

Under Federal Circuit law, the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant under Federal Rule of Civil Procedure 4 is a two-part inquiry.  *LSI Indus. Inc. v. Hubbell Lighting, Inc*., 232 F.3d 1369, 1371 (Fed. Cir. 2000).

---

[6] This makes good sense given that personal jurisdiction may be waived. *Rates Tech., Inc. v. Nortel Networks Corp*., 399 F.3d 1302, 1307 (Fed. Cir. 2005) (stating that "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived" (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-704 (1982)); *see* Fed. R. Civ. P. 12(h)(1).  In this case, both Honjo and BMS waived any possible objection to personal jurisdiction, underscoring how needless it would be to require a plaintiff to plead personal jurisdiction over each defendant with specificity without knowing whether a given defendant would even object to jurisdiction.

First, this Court determines whether the defendant is amenable to process in the forum state under the state's long-arm statute. *Id.* Second, the Court analyzes whether the exercise of jurisdiction is consistent with due process requirements under *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,* 326 U.S. 310 (1945).

Under the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, even incidental commercial contact with Massachusetts relating to the underlying cause of action is sufficient to confer personal jurisdiction. *See, e.g., Carlson Corp. v. Univ. of Vermont*, 380 Mass. 102, 109 (1980) (concluding there was jurisdiction over university in contract dispute where its only contact with Massachusetts was signing of contract). The Massachusetts long-arm statute has been construed to be "coextensive with the limits allowed by the Constitution." *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (same). The jurisdictional question here therefore collapses into the due process analysis.

Personal jurisdiction over a defendant may be either general or specific. *LSI Indus.*, 232 F. 3d at 1375. For specific jurisdiction, the Federal Circuit uses a three-part test to determine whether: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). The first two prongs are directed at the "minimum contacts" analysis, while the third concerns "fair play and substantial justice." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003). The "arise out of or related to" requirement "is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." *Avocent*, 552 F.3d at 1332. "With respect to the last prong, the

burden of proof is on the defendant, which must present a ***compelling case*** that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King* [*v. Rudzewicz*, 471 U.S. 462 (1985)]." *Id.* (emphasis added).

> **B.      There Is Specific Jurisdiction Over Ono.**

This dispute "arises out of" and "relates to" collaborative research activities in Massachusetts involving scientists at two Massachusetts entities and their interactions with Honjo and Ono, including critical in-person meetings in Massachusetts at which the Massachusetts scientists shared their research and made inventive contributions to the subject matter claimed in the Patents.  The case is also "related to" whether Dana-Farber has rights in the Patents, so that it can practice the claimed inventions in this District and license out rights to others.  Clearly, Dana-Farber has made out at least a prima facie case of specific personal jurisdiction over Ono, based upon the allegations in the Complaint and the facts set forth in accompanying affidavits and exhibits.  Ono's motion, in stark contrast, sets forth no facts whatsoever concerning its Massachusetts contacts or lack thereof.  Ono's silence speaks volumes given its undeniable involvement in the underlying events in this District that gave rise to this action.

> **1.      Dana-Farber's Claim Arises Out Of and Relates To Ono's Purposeful Contacts with Massachusetts**

As described above, this action both "arises out of" and "relates to" a collaboration among Freeman, Wood, and Honjo, a named inventor and co-assignee, that began at around the time of an October 1999 meeting in Cambridge attended by scientists at Dana-Farber, Ono, and GI.  Freeman Decl., ¶ 5, Ex. A; Dkt. No. 1, ¶ 27-28.  Shibayama, an Ono employee and a named inventor on the Patents, also attended this meeting.  Freeman Decl., ¶ 5, Ex. A.  At the time of

the 1999 meeting, Ono was engaged in a long-term collaboration with GI (a Massachusetts company).  Fiacco Decl.,¶¶ 9, 10, Exs. I, J.  Indeed, at least one of the other GI-Ono ongoing projects was discussed at the Dana-Farber/GI/Ono meeting on the same day that the critical discussion concerning PD-L1 took place.  Fiacco Decl.,¶¶ 9, 10, Exs. I, J; Freeman Decl., ¶ 5, Ex. A.

In 2000, Ono participated in another important meeting in Massachusetts at which Honjo, Freeman, and Wood met to discuss their work on PD-L1. Freeman Decl., ¶ 7, Ex. B.  Shibayama was also present at this meeting where Freeman made his presentation.  Freeman Decl., ¶ 8, Ex. C.  Ono can scarcely deny its involvement in these meetings when it is listed on meeting agendas and its logo appears on a slide deck from the meeting.  Freeman Decl., ¶ 7, Ex. B. These were plainly purposeful activities directed at Massachusetts giving rise to this correction of inventorship action.

Ono and Honjo are situated nearly identically in this lawsuit as co-owners of the Patents. Both were involved in the collaboration from the outset.  Honjo was working hand-in-hand with Ono as his commercialization partner.  Honjo came to Cambridge as part of Ono's collaboration with GI.  Ono's employee Shibayama attended the meeting as well.  Freeman Decl., ¶ 5, Ex. A. Following these Ono-sponsored meetings, Honjo engaged in extended collaborative research concerning the PD-1 pathway with Freeman and Wood, both located in Massachusetts.  That collaboration included exchanging research and materials with GI and Dana-Farber in Massachusetts; signing Material Transfer Agreements with Dana-Farber, a Massachusetts hospital; and two co-authored papers that are highly relevant to this case.  Ultimately, Shibayama and Honjo listed themselves as inventors on the Patents claiming the fruits of the collaboration while omitting Freeman and Wood.  The patent rights of the Japanese scientists were assigned to

both Honjo and Ono, and Ono then commercialized embodiments of the Patents, together with its licensee BMS.

Although even a "single act" can support personal jurisdiction so long as there is a "substantial connection" with the forum under Federal Circuit law, *Synthes*, 563 F.3d at 1297, here there is far more.  Ono, Honjo, and Shibayama had numerous deliberate contacts with Massachusetts as the collaboration was formed and progressed, ultimately giving rise to this inventorship action.  Strikingly, Honjo **concedes** that this Court has jurisdiction over him: his interactions with Freeman and Wood in Massachusetts more than suffice to support personal jurisdiction.  The facts with respect to Ono employee Shibayama support jurisdiction over Ono for the same reasons; the only difference for purposes of this motion is that Dana-Farber's Complaint identified Honjo by name but not Shibayama.

The facts concerning Ono's deliberate, purposeful contacts with the forum that gave rise to this lawsuit are more than adequate at this stage —prior to any discovery —to make a prima facie case of specific jurisdiction. *See id.* at 1297-98 (concluding there was specific jurisdiction in patent infringement case over foreign company where only evidence was that company's representatives displayed samples of allegedly infringing products in a booth at a single trade show meeting); *see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1352 (Fed. Cir. 2002) (defendant purposefully directed his activities at Ohio residents by negotiating a patent license with Ohio residents).

### 2.     Exercising Jurisdiction Over Ono Is Reasonable

Where, as here, Dana-Farber has demonstrated minimum contacts, the burden is on Ono to make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Elecs. for Imaging*, 340 F.3d at 1351-52 (citing *Burger King*, 471 U.S. at 477).  The Federal Circuit has explained that the exercise of  jurisdiction will generally be

unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

The Federal Circuit has articulated five factors to apply in this analysis, including:

> (1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1363 (Fed. Cir. 2001); *Mass. Inst. of Tech. v. Micron Tech., Inc.*, 508 F. Supp. 2d 112, 123 (D. Mass. 2007). Ono makes no attempt to address these factors in its brief, despite bearing the burden. For that reason alone, its motion should be denied. Moreover, this simply is not one of the "'rare' situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. 2003).

As to the burden on it, Ono has made no showing that litigating in this forum would be "onerous in a special, unusual, or other constitutionally significant way." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996). As a plaintiff in Delaware, Ono is a willing participant in U.S. patent litigation. Regardless of where in the United States this action proceeds, Ono's witnesses would need to travel to this country, and Ono has not shown that travel from Japan to Boston is be any more burdensome or time-consuming than travel from Japan to Wilmington, Delaware. *Synthes*, 563 F.3d at 1299 (indicating that travel to the United States from Brazil in order to defend against a patent infringement suit was "not unduly burdensome."). In fact, it is easier to get to Boston: Japan Airlines has direct, daily non-stop

flights from Tokyo to Boston, whereas travel from Tokyo to Wilmington would require connecting flights and take longer.

In effect, Ono is claiming that it can be sued in the United States *only* in a forum in which it consents to be sued, Delaware—even though Delaware has absolutely no connection with this dispute or the plaintiff, Dana-Farber.  Ono cannot so easily deprive Dana-Farber of its choice of forum by insisting on its own.  *See Merial Ltd. v. Cipla Ltd*., 681 F.3d 1283, 1294-1295 (Fed. Cir. 2012) (stating that "a defendant does not identify 'a more appropriate state' by suggesting an alternative forum with no basis for personal jurisdiction but for its consent").

The second and third factors also favor the Court's exercise of jurisdiction over Ono. Massachusetts has an interest in remediating injuries that originated within the Commonwealth. *See, e.g., Burger King*, 471 U.S. at 473 (explaining that a "[s]tate generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors").  With respect to the third factor, the Federal Circuit has explained that the "inquiry requires the court to focus on the convenience and effectiveness of relief from the plaintiff's perspective, as generally the first party to file suit chooses the forum . . ." *Breckenridge*, 444 F.3d at 1368 (concluding that "it is clearly more convenient for a Florida corporation with its base of operations in Florida to obtain relief in Florida").  Dana-Farber is a Massachusetts non-profit hospital, and both Freeman and Wood live here. As a plaintiff, Dana-Farber is entitled to pursue this action in the forum of its choosing.

As for the fourth factor, Massachusetts is not a less efficient forum to resolve this inventorship dispute than Delaware, as explained in detail in Dana-Farber's Opposition to Defendants' Motion to Transfer, filed concurrently.  The District of Delaware litigation is a jury case involving different parties, it concerns wholly separate questions of infringement and

- 16 -

validity, it involves only three of the five Patents, and it is on an entirely different schedule.
There would be no increased efficiency if this case were tried in Delaware. Any finding that
Delaware is a more appropriate forum would inappropriately defer to the defendant's choice of
forum, rather than the plaintiff's. And the final factor is neutral, because any District
adjudicating this federal question would apply the same law. *See Deprenyl*, 297 F.3d at 1355.

### 3. Ono Should Not Be Permitted to Cure Its Defective Motion Through a Reply Brief

Ono has made a tactical decision to omit any factual information about its Massachusetts
contacts, despite its wholly unsupported assertion that "the Court does not have personal
jurisdiction" over Ono. Dkt. No. 57 at 9. Ono made its choice, and it should not be permitted to
file a reply brief addressing the facts it ignored in a belated attempt to cure its faulty position.
Ono is surely aware of its contacts with Massachusetts, having presumably conducted an
investigation concerning personal jurisdiction over it before filing its motion to dismiss.

### C. In the Alternative, the Court Should Grant Dana-Farber Jurisdictional Discovery of Ono

If this Court were to find that the contacts described above are insufficient to establish a
prima facie case—and they are not— they at a minimum "suggest that there may be more such
contacts that [Dana-Farber] might be able to discover." *U.S. v. Swiss American Bank*, *Ltd*., 274
F.3d 610, 639 (1st Cir. 2001).[7] Discovery could provide additional details about, for example,
the relationship between Honjo and Ono, as well as the long-time relationship between Ono and

---

[7] The issue of whether discovery is appropriate in the first instance is governed by the law of the
regional circuit in which the district court sits. *Commissariat A L'Energie Atomique v. Chi Mei
Optoelectronics Corp*., 395 F.3d 1315, 1322-23 (Fed. Cir. 2005) (indicating that question of
threshold showing for jurisdictional discovery is controlled by the law of the regional circuit,
whereas questions as to the relevance of a request for jurisdictional discovery are governed by
the law of the Federal Circuit).

GI.  *See Sunview Condominium Association v. Flexel International, Ltd*., 116 F.3d 962, 964 (1st

Cir. 1997) (Under First Circuit case law, a plaintiff need only make a "colorable case" for

personal jurisdiction to be entitled to jurisdictional discovery);  *Cambridge Place Inv. Mgmt.,*

*Inc. v. Morgan Stanley & Co*., 794 F. Supp. 2d 265, 267-68 (D. Mass. 2011) (same).  Dana-

Farber's arguments for the exercise of personal jurisdiction over Ono at the very least meet the

First Circuit threshold for allowing jurisdictional discovery, if needed, to support the exercise of

personal jurisdiction over Ono in this case.

## CONCLUSION

For the reasons stated above, Dana-Farber requests that this Court deny Ono's motion to

dismiss for lack of personal jurisdiction.  In the alternative, Dana-Farber requests leave to take

jurisdictional discovery from Ono.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(D), Dana-Farber believes that oral argument may assist the court and

respectfully requests to be heard.

Respectfully submitted,

DANA-FARBER CANCER INSTITUTE, INC.
By its attorneys,

/s/   Barbara A. Fiacco
Donald R. Ware (BBO No. 516260)
Barbara A. Fiacco (BBO No. 633618)
Sarah S. Burg (BBO No. 683245)
Michael Hoven (BBO No. 688593)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000 (telephone)
(617) 832-7000 (facsimile)

Dated: February 24, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document, filed through the CM/ECF system, will be sent electronically to the registered participants of record as identified on the Notice of Electronic Filing on February 24, 2016.

/s/   Barbara A. Fiacco
Barbara A. Fiacco