**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DANA-FARBER CANCER INSTITUTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-13443-MLW |
| | ) | **HIGHLY CONFIDENTIAL –** |
| ONO PHARMACEUTICAL CO., LTD., | ) | **FILED UNDER SEAL** |
| TASUKU HONJO, E.R. SQUIBB & SONS, | ) | |
| L.L.C., AND BRISTOL-MYERS SQUIBB, CO., | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendants. | ) | |

**DANA-FARBER'S OPPOSITION TO ONO PHARMACEUTICAL CO., LTD.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**Table of Contents**

Introduction ........................................................................................................................ 1

Factual background ............................................................................................................ 3

    A.    Defendant Ono ...................................................................................................3

    B.    Ono Collaborated in Research in Massachusetts ....................................................4

    C.    Ono Participates in Key Collaboration Meetings Giving Rise to this
           Inventorship Action. ............................................................................................5

Argument ........................................................................................................................... 7

I.    The Legal Standard for Exercising Personal Jurisdiction. ................................... 7

II.    This Court Has Specific Jurisdiction Over Ono. ................................................. 8

    A.    This dispute "arises out of or relates to" Ono's deliberate activities
           purposefully directed to Massachusetts. ...............................................................9

III.    Exercising Jurisdiction Over Ono Is Reasonable ............................................... 12

CONCLUSION ............................................................................................................... 15

REQUEST FOR ORAL ARGUMENT ........................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Hananel*,
   510 F.3d 43 (1st Cir. 2007) ................................................................................ 8

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994) ......................................................................... 12

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*
   444 F.3d 1356 (Fed. Cir. 2006) .................................................................. 8, 14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................... 8, 13

*Carlson Corp. v. Univ. of Vermont*,
   380 Mass. 102 (1980) ...................................................................................... 7

*Cray Inc. v. Raytheon Co.*,
   179 F. Supp. 3d 977 (W.D. Wash. 2016) ....................................................... 12

*Elecs. For Imaging v. Coyle*,
   340 F.3d 1344 (Fed. Cir. 2003) ..................................................................... 12

*FMC Corp. v. Guthery*,
   No. 07-5409, 2008 U.S. Dist. LEXIS 60710 (D.N.J. Aug. 6, 2008) .................... 11

*Inamed Corp. v. Kuzmak*,
   249 F.3d 1356 (Fed. Cir. 2001) ......................................................... 9, 11, 13

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
   232 F.3d 1369 (Fed. Cir. 2000) ....................................................................... 7

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012) ....................................................................... 9

*Nowak v. Tak How Investments, Ltd.*,
   94 F.3d 708 (1st Cir. 1996) ........................................................................... 13

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) .................................................................. 7, 13

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998) ..................................................................... 11

*Polar Electro Oy v. Suunto Oy*,
  829 F.3d 1343 (Fed. Cir. 2016) ............................................................................. 8

*Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*,
  116 F.3d 962 (1st Cir. 1997) .............................................................................. 12

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009) ........................................................... 7, 8, 10 11 13

*United Elec. Radio & Mach. Workers v. Pleasant Street Corp.*,
  987 F.2d 39  (1st Cir. 1993) ............................................................................... 12

**Statutory Authorities**

M.G.L. c. 223A, § 3 ......................................................................................... 7

**Other Authorities**

4 Charles Alan Wright *, Federal Practice and Procedure*, § 1067.6 (3d ed. 2007) ....................... 9

http://news.bms.com/press-release/partnering-news/bristol-myers-squibb-and-ono-
  pharmaceutical-company-enter-settlement-a4 ....................................................... 13

## INTRODUCTION

In its Amended Complaint (Dkt No. 98), Dana-Farber Cancer Institute, Inc. ("Dana-Farber") alleges facts that more than suffice to support this Court's exercise of personal jurisdiction over defendant Ono Pharmaceutical Co., Ltd. ("Ono").  Those allegations, moreover, are backed up by specific evidence, including contemporaneous documentation of Ono's involvement in the Massachusetts research collaboration that gives rise to this action.  Ono's motion does not controvert a single one of Dana-Farber's allegations, ignores the evidence submitted by Dana-Farber, and offers no evidence of its own to support the attorney argument on which the Ono's entirely relies.

Accepting Dana-Farber's allegations as true, as the Court must in considering Ono's motion, there can be no question that Dana-Farber's correction of inventorship claim arises out of research activities and face-to-face meetings in Massachusetts regarding the PD-1/PD-L1 pathway, activities and meetings in which Ono directly participated.  The complaint specifically alleges personal jurisdiction over Ono based in part on Ono's "participation, through its employee and named inventor Shibayama, in face-to-face collaboration meetings in Cambridge, Massachusetts in 1999 and 2000," where Dana-Farber's Freeman and Genetics Institute's Wood shared their ideas and experimental data.  Dkt. No. 98, Amended Complaint (hereinafter "Am. Compl."), ¶ 21.

 Ono's brief tries to brush off Shibayama's connection to the case, suggesting that he was merely an attendee whose presence had no connection with the events giving rise to Dana-Farber's claim.  Dkt. No. 104, Ono Br. at 4.  But Ono never mentions that Shibayama is a ***named***

*inventor* on each of the six patents-in-suit (the "Patents").[1]  Nor does Ono acknowledge the Amended Complaint's allegation that the meetings Shibayama attended in Cambridge were "collaboration meetings."  *Id.*  He was not just a random attendee at meetings in Cambridge; rather, he was there as one of collaborating scientists with whom Dr. Freeman of Dana-Farber and Dr. Wood of Genetics Institute privately shared their research and ideas and thereby communicated important contributions to conception of the subject matter that Shibayama, Honjo and the others wrongly claimed as their sole invention.

Ono offers no plausible argument for why it would offend due process to resolve this dispute in Massachusetts.  Ono has had extensive commercial contacts with Massachusetts, including years of sponsoring collaborative research in this District.  Ono as the assignee of Shibayama's rights is positioned essentially identically to Honjo, who does not contest personal jurisdiction over him, with respect to this Court's exercise of personal jurisdiction here.  Ono does not explain why there is any meaningful distinction between Honjo's Massachusetts contacts and its own, or why if Massachusetts is such an improper forum, Honjo (advised by the same legal counsel) would disagree.  Nor does it explain why litigating in Massachusetts would be so burdensome when its counsel are already representing three other Defendants who share the same legal interests in the Patents and over whom the Court already has jurisdiction.  Finally, Ono's argument that Delaware is a more appropriate forum because of the ongoing litigation no longer holds any water: Ono has settled the entire Delaware litigation, and the District of Delaware—which already held it would have no jurisdiction over this inventorship case—no

---

[1] The six patents are U.S. Patent No. 7,595,048; U.S. No. 8,168,179; U.S. Patent No. 8,728,474; U.S. Patent No. 9,067,999; U.S. Patent No. 9,073,994; and U.S. Patent No. 9,402,899 (collectively, the "Patents"), which all relate to a new approach to treating cancer.

longer has any interest in the Patents.  Ono's motion lacks any merit and should be denied forthwith so that this case can move forward without further delay.[2]

## FACTUAL BACKGROUND

Strikingly, Ono's brief makes no mention of the extensive factual evidence previously submitted by Dana-Farber to this Court.[3]  *See, e.g.*, January 30, 2017 Declaration of Barbara Fiacco (hereinafter "Fiacco Decl."), ¶¶ 2-10, Exs. A-I.  In the earlier briefing on this issue, Dana-Farber submitted documents under seal in separate filings to protect its third-party confidentiality obligations.  This evidence, in addition to the allegations in the Amended Complaint, shows that Ono had direct, active ties to collaborative research and events that took place in Massachusetts and give rise to this action filed by Dana-Farber, a Massachusetts non-profit institution dedicated to cancer research and treatment.

### A.    Defendant Ono

Ono, a Japanese company, is a co-assignee of the Patents along with Honjo.  Fiacco Decl. ¶¶ 11-16, Exs. J-O.  Ono's employee Shibayama is a named co-inventor on the Patents. Dkt 51 at 4.  Ono and Honjo partnered to develop and commercialize research through Honjo's laboratory at Kyoto University.  *See, e.g.*, Dkt. No. 51 at 4 (acknowledging "a collaboration between Dr. Honjo's . . . laboratory groups at Kyoto University and Ono"). To that end, Honjo and his Kyoto University colleagues, Minato and Iwai, assigned rights in the Patents to both Ono and Honjo.

---

[2] Should this Court not deny Ono's motion on the record before it, Dana-Farber requests jurisdictional discovery from Ono to further demonstrate Ono's contacts with Massachusetts.

[3] This evidence is being submitted again through the accompanying affidavit of Barbara Fiacco.

Shibayama also assigned his rights to Ono and Honjo. Fiacco Decl., ¶¶ 11-16, Exs. J-O.

Defendants have represented that Honjo licensed certain of his patent rights to Ono.  Dkt. No. 57

at 4.  Ono and Honjo are thus similarly situated in this litigation.

### B.      Ono Collaborated in Research in Massachusetts

In 1994, Ono began ███████████████████████████████████████████

███████████████████████████████████. Fiacco Decl., ¶ 2, Ex. A at 1.

In 1996, ██████████████████████████████████████████████████

████████████████████████████████ Fiacco Decl., ¶ 3, Ex. B

at 1.

Importantly for purposes of this case, in 1999, ████████████████████

████████████████████████ Fiacco Decl., ¶¶ 4-5, Exs. C-D.  In

January 1999, Ono employee Shibayama wrote to Wood at GI, ███████████████



Fiacco Decl., ¶ 5, Ex. D (emphasis added).  ████████████████████████

█████████████████████████████████████████████████████

██████████████████████████

On March 15, 1999, ████████████████████████████████████

█████████████████████████████████████████

███████████████ Fiacco Decl., ¶ 6, Ex. E. ████████████████████████

4

████████████████████████████████████████████ *Id.* ████████████████████

█████████████████████████████████████████████████

███████████████████████████ and in furtherance of the collaboration, Wood was

trying to identify molecules that would interact with PD-1 in order to better understand its

biological function.  Am. Compl., ¶¶ 27-28; Fiacco Decl. ¶ 4, Ex. C.  He obtained cDNA

encoding the PD-1 protein from Honjo.  Am. Compl., ¶ 28.  In the meantime, Dana-Farber

researcher Gordon Freeman discovered the ligand to PD-1, a novel protein now known as PD-

L1, and he thereafter transferred cDNA encoding PD-L1 to Wood at GI for further study.  Am.

Compl., ¶¶ 24-26.  Wood's experiments indicated that Freeman's PD-L1 molecule bound to PD-

1 on the surface of T cells.  Am. Compl., ¶ 29.

C. **Ono Participates in Key Collaboration Meetings Giving Rise to this Inventorship Action.**

Following the discovery that PD-L1 bound to PD-1, Wood arranged a meeting among

Dana-Farber, GI, and Honjo, and colleagues from Ono and Kyoto University, at GI's offices in

Cambridge on October 25, 1999.  Am. Compl., ¶ 31; Fiacco Decl., ¶ 7, Ex. F.  This meeting took

place during a larger, day-long GI/Ono collaboration meeting.  Fiacco Decl., ¶ 7, Ex. F.  At the

meeting, Freeman, Wood, and Honjo shared their research.  Ono scientist Shibayama attended

and participated in the meeting with Freeman and Wood and thus, on behalf of Ono, received the

benefits of their contributions.  Am. Compl., ¶ 32.  Honjo admits that Shibayama attended, and

that a discussion of PD-1 and PD-L1 took place. Dkt. No. 47-1, ¶ 29.

During this joint meeting of Ono, GI, Honjo, and Freeman, Freeman made a confidential

presentation about his work on PD-L1.  Am. Compl., ¶ 33.  At that time, Freeman and Wood's

work showing the binding of PD-L1 to PD-1 had not yet been published.  *Id.*  Freeman also

shared with Honjo and the other meeting participants (including Ono's Shibayama) his

unpublished findings that the cDNA partially encoding PD-L1 that Freeman had identified came

from a human ovarian tumor.  Am. Compl., ¶ 34.  This information indicated that PD-L1 was

expressed by at least some human tumors.  *Id.*

Dana-Farber, GI, Honjo, and Ono, again including named inventor Shibayama, met again

in Cambridge on September 8, 2000 to discuss their collaborative research and share their ideas.

Am. Compl., ¶ 41; Fiacco Decl., ¶ 9, Ex. H.  Dana-Farber's uncontroverted allegation and

undisputed evidence is that Ono's employee Shibayama actively participated and presented in

this September 8, 2000 collaboration meeting—denominated by Ono the "Honjo/Genetics

Institute/Ono Scientific Meeting"— concerning the PD-L1 pathway.  Am. Compl., ¶ 41; Fiacco

Decl., ¶¶ 9-10, Exs. H, I.  Ono's logo appears front and center:



**Honjo / Genetics Institute / Ono**

## Scientific Meeting

**September 8, 2000**

Freeman made a presentation to the meeting participants that included his data demonstrating

PD-L1 expression on various human tumor cell lines.  Am. Compl., ¶ 41. This research led to the

suggestion that blocking the pathway could be an effective means to enhance anti-tumor

immunity, an insight that is a critical element in every one of the Patents prosecuted by Ono and

Honjo.  Am. Compl., ¶¶ 43, 57.

Dana-Farber's Amended Complaint alleges that Freeman and Wood made inventive

contributions to the Patents through, among other things, these collaborative research activities

and meetings with Honjo and Ono that took place in Massachusetts.  Am. Compl., ¶¶ 33, 41, 57.

Instead of crediting Freeman and Wood, however, Honjo and Shibayama named only themselves

as co-inventors, along with two Japanese colleagues.

## ARGUMENT

### I.      The Legal Standard for Exercising Personal Jurisdiction.

Federal Circuit law governs the question of personal jurisdiction because an inventorship

action is "intimately related to substantive patent laws."  *Synthes (U.S.A.) v. G.M. Dos Reis Jr.*

*Ind. Com de Equip. Medico*, 563 F.3d 1285, 1292 (Fed. Cir. 2009).  At this stage, Dana-Farber

need only make a "prima facie showing" that Ono is subject to personal jurisdiction.  Under this

standard, the Court must accept the uncontroverted allegations in Dana-Farber's Amended

Complaint as true and resolve any factual conflicts in Dana-Farber's favor.  *Nuance Commc'ns,*

*Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).For an out-of-state

defendant such as Ono, this Court first determines whether the defendant is amenable to process

in Massachusetts under the long-arm statute.  *LSI Indus. Inc. v. Hubbell Lighting, Inc*., 232 F.3d

1369, 1371 (Fed. Cir. 2000).  Second, the Court analyzes whether the exercise of jurisdiction is

consistent with due process requirements.  *Id.*

Under the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, even incidental

commercial contact with Massachusetts relating to the underlying cause of action is sufficient to

confer personal jurisdiction.  *See, e.g., Carlson Corp. v. Univ. of Vermont*, 380 Mass. 102, 109

(1980) (concluding there was jurisdiction over university in contract dispute where its only

contact with Massachusetts was signing of contract).  The Massachusetts long-arm statute has

been construed to be "coextensive with the limits allowed by the Constitution."  *Adelson v.*

*Hananel*, 510 F.3d 43, 49 (1st Cir. 2007).  The jurisdictional question here therefore collapses

into the due process analysis.

For specific jurisdiction, the Federal Circuit uses a three-part test to determine: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016).  A defendant's activities are "purposefully directed" where they create a "substantial connection" to the forum.  *Synthes*, 563 F.3d at 1297 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)).  "[I]solated and sporadic" contacts, or even a "***single act***," may create a "substantial" connection to the forum so long as the contacts are not "random, fortuitous, or attenuated."  *Id.* (emphasis added).  Finally, asserting personal jurisdiction is reasonable and fair unless the defendant carries its burden of proof by "present[ing] a ***compelling case*** that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test articulated by the Supreme Court in *Burger King*.  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (emphasis added).

## II.     This Court Has Specific Jurisdiction Over Ono.

Dana-Farber has made out at least a prima facie case of specific personal jurisdiction over Ono through the allegations in the Amended Complaint and the facts set forth in the accompanying affidavits and exhibits submitted both here and in the last round of briefing on this issue.  Ono's motion, in stark contrast, submits ***no evidence*** whatsoever concerning its Massachusetts contacts, instead relying entirely on erroneous legal argument.[4]

Ono does not appear to contest that its research activities and meetings were "purposefully directed" at Massachusetts.  Rather, Ono argues incorrectly that "Dana-Farber is

---

[4] Ono states in a single sentence—unsupported by any evidence or even a citation—that it lacks contacts with Massachusetts.  Dkt. No. 104 at 9.

obligated to plead facts that show Ono directed activity at Massachusetts related to Dana

Farber's inventorship claims." Ono Br. at 6-7. This is incorrect. It is black letter law that

"parties may satisfy federal pleading standards by alleging personal jurisdiction generally,

without asserting a specific basis for the court's personal jurisdiction over a defendant." *Merial*

*Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012); *see also* 4 Charles Alan Wright et al.,

Federal Practice and Procedure § 1067.6 (3d ed. 2007) (indicating that "under Federal Rule 8(a)

plaintiffs are not required to plead the basis for personal jurisdiction over defendants"). Ono

cannot use an erroneous pleading standard to brush aside its Massachusetts contacts underlying

this action. Dana-Farber Amended Complaint, as well as other accompanying evidence, plainly

establishes a prima facie case of personal jurisdiction over Ono.

> **A.      This dispute "arises out of or relates to" Ono's deliberate activities
> purposefully directed to Massachusetts.**

Dana-Farber's inventorship claim not only "relates to" but also "arises out of" the

collaborative research activities in Massachusetts involving Freeman, Wood, Honjo and Ono.

The "arise out of or related to" requirement "is disjunctive in nature, indicating an added

flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of'

standard." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001). This dispute plainly

"relates to" and "arises out of" collaborative research activities in Massachusetts—including

critical in-person collaboration meetings in Cambridge at which the Massachusetts-based

scientists Freeman and Wood shared their research with Honjo and Shibayma, Ono's employee

and representative at the meetings.

Although even a "single act" can support personal jurisdiction, *Synthes,* 563 F.3d at 1297,

here there is far more. First, Ono participated in ███████████████ specifically ***regarding***

***the PD-1/PD-L1 pathway*** in Massachusetts that ultimately gave rise to the Patents and this

lawsuit.  Ono mistakenly claims that Dana-Farber alleges only that Ono "support[ed] Dr.

Honjo's research in Japan".  Dkt. No. 104 at 7.  In fact, the Amended Complaint alleges and

Dana-Farber's evidence shows that ███████████████████████████████████████████

████████████  Fiacco Decl., ¶ 4-5, Exs. C, D; ████████████████████████████████

████████████████████████████████████████████  Fiacco Decl., ¶ 6, Ex.

E; that Freeman and Wood then identified the PD-1 ligand (PD-L1), Am. Compl., ¶ 29; that

Freeman and Wood shared their ideas with Ono and Honjo in Massachusetts—ideas that found

their way into the Patents—and that Ono and Honjo then failed to credit Freeman and Wood's

inventive contributions made in Massachusetts when they obtained the Patents, Am. Compl.,

¶¶ 33, 41, 57.

     The linchpin of Ono's jurisdictional argument in an assertion of fact made simply as

attorney argument, without any evidentiary support, purportedly contradicting the allegations in

the Amended Complaint that Ono's collaboration in Massachusetts was separate and distinct

from the PD-1/PD-L1 research collaboration that involved Freeman and Wood.  *Id.*  But on a

motion to dismiss for lack of personal jurisdiction, the Court must accept as true Dana-Farber's

allegations, not a defendant's.  Ono's argument at best is directed to the ultimate merits of the

case; in a jurisdiction motion, it misses the mark.  The Complaint sets forth detailed facts

showing that what began as a narrower Ono/GI/Honjo collaboration led to a broader

collaboration that included Dana-Farber's Freeman. giving rise to this lawsuit.  Dana-Farber's

allegation that, through Shibayama, Ono participated in "collaboration meetings" in Cambridge

with Freeman and Wood concerning the PD-1/PD-L1 pathway should end the matter.  Ono

cannot brush it away by offering a different interpretation of the parties' interactions at this stage

of the case.  Ono's involvement in the alleged Massachusetts-based activities is more than

enough to establish specific jurisdiction under Federal Circuit law.  *Inamed*, 249 F.3d at 1362-63 (concluding that negotiation and execution of license agreement in forum were contacts sufficiently related to the litigation where patent misuse cause of action would necessitate inquiry into the factual circumstances surrounding the then-terminated agreement).  Indeed, under Federal Circuit law, a single collaborative meeting where inventive ideas are conveyed is sufficient to support a cause of action for correction of inventorship.  *See, e.g.*, *Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998).

In short, the participation of named inventor Shibayama in the Massachusetts collaboration meetings as Ono's agent is more than enough to establish personal jurisdiction over Ono.  *See, e.g.*, *Synthes*, 563 F.3d at 1297-98 (concluding there was specific jurisdiction in patent infringement case over foreign company where only evidence was that company's representatives displayed samples of allegedly infringing products in a booth at a single trade show meeting); *FMC Corp. v. Guthery*, No. 07-5409, 2008 U.S. Dist. LEXIS 60710 (D.N.J. Aug. 6, 2008) (holding exercise of personal jurisdiction over purported inventor proper because Guthery's conduct was purposefully directed at New Jersey when he (1) initiated a phone call to FMC and disclosed his idea, and (2) sent a fax to New Jersey requesting certain acid samples). Ono sponsored and physically participated in key research collaboration meetings at which the parties shared information about their discoveries.  Shibayama and Honjo used the ideas that Freeman and Wood shared to became co-inventors on the Patents, and failed to include Freeman and Wood as inventors.  These activities plainly give rise to, and at minimum relate to, Dana-Farber's inventorship claim.  *See, e.g.*, *Cray Inc. v. Raytheon Co.*, 179 F. Supp. 3d 977 (W.D. Wash. 2016) (finding personal jurisdiction over Raytheon in Washington in correction of inventorship action because Raytheon allegedly worked with and intentionally acquired

information from purported inventor and his employees in Washington and that Raytheon allegedly used the information to obtain patents at issue).

Lastly, if the Court had concern about whether Dana-Farber had shown sufficient minimum contacts needed for a prima facie case of personal jurisdiction, the proper procedure would not be to grant Ono's motion.  Instead, the Court should lift the stay of discovery that has prevented Dana-Farber from taking any discovery from Ono and Honjo, including jurisdictional discovery, so that Dana-Farber would have the opportunity to develop additional evidence to support jurisdiction.  *See Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997) (Under First Circuit case law, a plaintiff need only make a "colorable case" for personal jurisdiction to be entitled to jurisdictional discovery); *United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 47-48 & n.18 (1st Cir. 1993) (refusing to allow jurisdictional discovery where record is "incomplete" may constitute an abuse of discretion).

## III.    Exercising Jurisdiction Over Ono Is Reasonable.

Where, as here, Dana-Farber has demonstrated minimum contacts, the burden is on Ono to make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Elecs. for Imaging v. Coyle 1344 (Fed. Cir. 2003)*, 340 F.3d at 1351-52.  The exercise of jurisdiction will generally be found unreasonable only in "the ***rare situation*** in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (emphasis added).  That situation plainly does not exist here.

The Federal Circuit has articulated five factors to apply in this analysis, including:

> (1) the burden on the defendant, (2) the interests of the forum
> State, (3) the plaintiff's interest in obtaining relief, (4) the interstate
> judicial system's interest in obtaining the most efficient resolution

of controversies, and (5) the shared interest of the several States in
furthering fundamental substantive social policies.

*Inamed*, 249 F.3d at 1363.  Ono has failed to raise a valid argument with respect to any of the

due process factors.

First, Ono has made no showing that litigating in this forum would be "onerous in a

special, unusual, or other constitutionally significant way." *Nowak v. Tak How Investments, Ltd*.,

94 F.3d 708, 718 (1st Cir. 1996).  Ono makes only an unsupported attorney argument that "Ono

has little to no contact with Massachusetts" and that this litigation "would be a substantial

burden," without any further explanation of the burden or its purportedly "little contact."  Dkt.

No. 104 at 9.  This bare assertion falls far short of the constitutionally significant burden the law

imposes.  *E.g*., *Synthes*, 563 F.3d at 1299 (travel to the United States from Brazil in order to

defend against a patent infringement suit "not unduly burdensome.").  As noted, Ono has had

ongoing commercial relationships in Massachusetts for decades.  And as a practical matter,

litigating this case will impose no added burden on Ono.  Ono is represented by the same counsel

who represent Honjo and BMS, thus minimizing the burden on Ono.  *See, e.g*., *Nuance*, 626 F.3d

at 1234.  Their interests in the inventorship of the Patents are aligned.  What is more, Ono has

not asserted that it will bear one penny of the litigation cost, in a litigation that is most likely

being controlled by Ono's exclusive licensee, BMS.  Even if Ono were paying its own litigation

cost, there is no hardship here; under the terms of the recent settlement agreement, Merck made

an initial payment of $625 million to Ono and BMS and is obligated to pay a 6.5% royalty

through December 31, 2023 which will be split between BMS and Ono in a 75/25 allocation.[5]

---

[5] Press Release, Bristol-Myers Squibb and Ono Pharmaceutical Company Enter Settlemetn and
License Agreement with Merck to Resolve PD-1 Anitbody Patent Litigation (Jan. 20, 2017),

As to the second factor, Massachusetts has an interest in remediating injuries that originated within the Commonwealth. *See, e.g.*, *Burger King*, 471 U.S. at 473 (explaining that a "[s]tate generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors").  Ono fails to analyze correctly the third factor, which "requires the court to focus on the convenience and effectiveness of relief from the ***plaintiff's perspective***, as generally the first party to file suit chooses the forum . . ." *Breckenridge*, 444 F.3d at 1368 (concluding that "it is clearly more convenient for a Florida corporation with its base of operations in Florida to obtain relief in Florida").  Dana-Farber is a Massachusetts non-profit hospital, and both Freeman and Wood live here.  As a plaintiff, Dana-Farber is entitled to choose Massachusetts as the forum.

Ono's argument that the case should instead be litigated in Delaware (ignoring that the Delaware court ruled it would lack jurisdiction) has lost all traction in light of Ono's settlement of that case.  Dkt. No. 104 at 10-11.  On January 20, 2017, Ono and the other Defendants announced that they had entered into a settlement agreement, and the District of Delaware entered their stipulation of dismissal on January 23, 2017.  Dkt. No. 257, Order at 3, 14-cv-0113 (D. Del. Jan 23, 2017).  There is no longer any case pending in Delaware concerning the Patents, and Delaware has no interest whatsoever in Ono's dispute with Dana-Farber.  Massachusetts is the only reasonable and efficient forum to resolve this inventorship dispute under the fourth factor.[6]

---

http://news.bms.com/press-release/partnering-news/bristol-myers-squibb-and-ono-pharmaceutical-company-enter-settlement-a4.

[6] The final factor is neutral, because any federal court would apply the same inventorship law.

## CONCLUSION

For the reasons stated above, Dana-Farber requests that this Court deny Ono's motion to dismiss for lack of personal jurisdiction.  In the alternative, Dana-Farber requests leave to take jurisdictional discovery from Ono.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(D), Dana-Farber believes that oral argument may assist the Court and respectfully requests to be heard.

Respectfully submitted,

DANA-FARBER CANCER INSTITUTE, INC.
By its attorneys,

*/s/* Barbara A. Fiacco
Donald R. Ware (BBO No. 516260)
Barbara A. Fiacco (BBO No. 633618)
Sarah S. Burg (BBO No. 683245)
Michael Hoven (BBO No. 688593)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000 (telephone)
(617) 832-7000 (facsimile)

Dated: January 30, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document, filed under seal, was served via email on all counsel of record.

*/s/* Barbara A. Fiacco
Barbara A. Fiacco