# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANA-FARBER CANCER INSTITUTE, INC.,<br><br>Plaintiff,<br><br>- and-<br><br>PFIZER INC., WYETH LLC,<br>and GENETICS INSTITUTE, LLC,<br><br>Intervenors-Plaintiffs,<br><br>v.<br><br>ONO PHARMACEUTICAL CO., LTD.,<br>TASUKU HONJO, E.R. SQUIBB & SONS,<br>L.L.C., and BRISTOL-MYERS SQUIBB, CO.,<br><br>Defendants. | Civil Action No. 1:15-cv-13443-PBS<br><br>**PUBLIC REDACTED VERSION**<br><br>Leave to File Granted on 8/13/2019 |

**PLAINTIFF DANA-FARBER CANCER INSTITUTE, INC.'S**
**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. DEFENDANTS' DELAY TACTICS WERE CALCULATED AND
UNREASONABLE ............................................................................................... 1

    A. Defendants' Delayed Acceptance of Service Undermines Their Claim that
They Sought to Expedite Resolution of this Case ..................................... 1

    B. Defendants' Frivolous Procedural Motions Delayed the Case Rather than
Expediting It .............................................................................................. 2

    C. Defendants Cannot Justify their Withholding of Relevant License Agreements
and Deposition Testimony ......................................................................... 5

    D. Defendants Have No Good-Faith Explanation for their Last-Minute Attempts
to Delay Trial ............................................................................................ 6

III. DEFENDANTS CANNOT JUSTIFY THEIR UNREASONABLE LITIGATION
POSITIONS .......................................................................................................... 6

    A. Defendants' Challenge to the Scope of the Collaboration Was Objectively
Unreasonable ............................................................................................. 7

    B. Defendants' Made Objectively Unreasonable Challenges to Corroboration .......... 7

    C. Defendants' Attempts to Justify Their Arguments About Freeman's and
Wood's PD-L2 Contributions are Contrary to Undisputed Facts ............. 9

    D. Defendants' Assertion of a Laches Defense Was Objectively Unreasonable ......... 9

IV. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) .................................................................................... 10

*Nartron Corp. v. Schukra U.S.A., Inc.*,
  558 F.3d 1352 (Fed. Cir. 2009) ....................................................................................... 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ................................................................................................... 1, 6

*TransWeb, LLC v. 3M Innovative Props. Co.*,
  812 F.3d 1295 (Fed. Cir. 2016) ....................................................................................... 9

*XYZ Corp. v. United States (In re Keeper of the Records)*,
  348 F.3d 16 (1st Cir. 2003) ............................................................................................. 3

**RULES**

Mass. R. Prof. C. 3.4(f) ........................................................................................................ 6

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| "Brief" | Plaintiff Dana-Farber's Memorandum in Support of Motion For Attorneys' Fees, Dkt. 406 |
| "Decl" | Declaration of Barbara A. Fiacco in Support of Dana-Farber Cancer Institute's Motion for Attorneys' Fees, Dkt. 407 |
| "Maslowski Decl." | Declaration of Steven Maslowski, Dkt. 416 |
| Opp. | Defendants' Corrected Opposition To Dana-Farber's Motion for Fees, Dkt. 420 |
| "Second Decl." | Second Declaration of Barbara A. Fiacco |

I.   INTRODUCTION

This case fits well within the definition of an "exceptional case" under Section 285: one that stands out as "out of the ordinary course" or "unusual," based on considerations of "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553, 558 n. 6 (2014). In its Motion for Attorneys' Fees, Dana-Farber laid out the unusual nature of this case: Defendants engaged in blatantly dilatory tactics and pressed objectively unreasonable positions to delay correction of inventorship, enabling them to secure lucrative licensing deals and preempt Dana-Farber's own licensing opportunities. Defendants respond that Dana-Farber's motion amounts to a belated claim for money damages. Not so. Dana-Farber's motion is directed to what makes this case exceptional: Defendants engaged in a purposeful delay strategy for an improper purpose. Their licensing strategy exposes Defendants' billion-dollar financial interest in avoiding correction of inventorship for as long as possible. Their Opposition offers no other credible explanation for their actions, and undermines rather than supports their claim to have acted in good faith and have engaged merely in "ordinary litigation."

Defendants' litigation conduct sets this case apart from the "run-of-the-mill" case. It forced Dana-Farber to expend an inordinate amount of resources to correct inventorship and strung out this case for 3 1/2 years, enabling Defendants to take their purported "exclusive" rights to the bank in 2017 and 2018. This is a case that cries out for fee shifting.

II.  **DEFENDANTS' DELAY TACTICS WERE CALCULATED AND UNREASONABLE**

   A.   **Defendants' Delayed Acceptance of Service Undermines Their Claim that They Sought to Expedite Resolution of this Case**

Defendants argue that they were not *required* to waive service of process in October 2015, and that Ono would have been entitled to 90 days to respond to the Complaint if it formally waived

1

service under Rule 4.  These arguments only confirm that Defendants had no intention of expediting the litigation.  If Defendants truly wanted to hasten resolution of the case, they would not have demanded the maximum period they could have claimed for Ono to respond.[1]

Even worse, when Dana-Farber asked Defendants to accept service, they attempted to pressure Dana-Faber into transferring the case to Delaware, their preferred forum.  On November 4, 2015, their counsel Steve Maslowski told Dana-Farber's counsel that "Ono would waive service of the complaint *if Dana-Farber agreed to refile its complaint in Delaware*."  Maslowski Decl., ¶2 (emphasis added).  This would have required Dana-Farber to file its complaint in a jurisdiction to which it has no ties and which had nothing to do with the inventorship dispute.  It also would have forced Dana-Farber to incur considerable additional travel costs and local counsel fees. This strong-arm, coercive tactic undermines Defendants' argument of good faith.

### B. Defendants' Frivolous Procedural Motions Delayed the Case Rather than Expediting It

Defendants now contend that their multiple procedural motions—including Ono's multiple motions to dismiss for lack of personal jurisdiction, BMS and Honjo's motion to dismiss for failure to join an indispensable party, their motion to transfer to Delaware and subsequent motion for reconsideration of that motion, and their motion to stay discovery—were "intended to expedite, not delay, this litigation." Opp. at 8, 10.  Defendants' assertion that their true intent was to "expedite" Dana-Farber's inventorship claim lacks any supporting evidence.  Defendants refused Dana-Farber's request for discovery into their subjective state of mind at the time and, absent such discovery, the Court should disregard all representations about Defendants' "intent."  *See, e.g., XYZ*

---

[1] Defendants cite their conflict waiver request as an excuse for delay.  They note that Akin Gump requested the waiver on October 16, 2015, but omit that Dana-Farber granted it *that very same day*. *See* Second Decl., Ex. 23 (filed herewith). Any conflict issues were resolved by October 16, contrary to Defendants' attempt to suggest otherwise.

2

*Corp. v. United States*, 348 F.3d 16, 24 (1st Cir. 2003) (rejecting party's attempt to "selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process").

It was clear from the outset that Defendants' spurious motions would delay, not expedite, resolution of Dana-Farber's case. Because of the advanced stage of the Delaware litigation, this case could not have proceeded on a parallel track with it. At the time of the first transfer briefing in February 2016, discovery in the Delaware cases had been ongoing for more than a year, Dkt. 64, Ex. 22-23, and was due to close in May. *See* Dkt. 61 at 6, 19; Dkt. 52, Ex. 17. By the time the transfer motion was briefed in Delaware in May and June, the Delaware court had held a *Markman* hearing, three of the four named inventors had been deposed, fact discovery was set to close in less than four weeks, and trial had been set for April 2017. *See* Decl., Ex. 14, 18, 22; Second Decl., Ex. 24. By contrast, discovery had not even begun in Dana-Farber's inventorship case.

When Dana-Farber proposed that discovery proceed regardless of the ultimate decision on venue, Defendants instead sought and obtained a stay of discovery that lasted until April 13, 2017. Dkt. 80, 122. Even after the Delaware court rejected their transfer motion as unauthorized under the transfer statute, Defendants refused to join a request that the discovery stay be lifted. Decl., Ex. 11. Defendants' stonewalling cannot have been intended to "expedite, not delay" the litigation.

Ono's personal jurisdiction motion, and Ono's renewal of it in 2017, were particularly egregious, given the wealth of information available to Defendants' counsel, including numerous documents within Ono's and Honjo's possession, evidencing Ono's strong contacts in Massachusetts related to PD-1/PD-L1, including its drug development collaboration with GI, Ono's agreement to put PD-1 into the GI development pool, and Ono's participation in the collaboration meetings in Massachusetts. Brief at 9; Order at 17-18, 20.

As Defendants concede in their corrected brief, Dana-Farber affirmatively sought jurisdictional discovery, but was rebuffed. Opp. at 11; *see also* Dkt. 417. Dana-Farber had served discovery requests on Honjo that were directed to Ono's role in the collaboration as early as January 12, 2016.[2] Second Decl., Ex. 25. Dana-Farber also requested jurisdictional discovery in its opposition to Ono's jurisdictional motion, Dkt. 127 at 3, n. 2. Moreover, by the time Ono renewed its jurisdictional motion in January 2017, all three Defendants and their counsel were fully aware of the collaboration meetings among Ono, Honjo, GI , and Freeman, which had been the subject of deposition testimony in 2016 in the Merck litigation. Brief at 12-13. Exhibits marked at those depositions, *see* Decl., Exs. 17, 19-20, evidenced Ono's jurisdictional ties to Massachusetts. Brief at 12. Despite this, Ono renewed its motion to dismiss in January 2017, further delaying the case and forcing Dana-Farber to spend time and money briefing the motion.[3] Dkt. 103-104.

Defendants now offer a vague, unsupported "explanation" for withdrawing their motions mere days before oral argument, asserting "changed circumstances." Opp. at 12. They provide no documentary support or attorney declaration to support this assertion, and it should be disregarded.

---

[2] *See, e.g.*, Request No. 11: "All documents reflecting or relating to any contract(s), agreement(s), or understanding(s) between Honjo, Ono, BMS, or Squibb on the one side and GI on the other side concerning the Patents or research relating to PD-1, PD-L1, PD-L2, or inhibition of the function of PD-1, PD-L I, or PD-L2 for treatment of cancer." Documents responsive to this request clearly showed that research studying the PD-1/PD-L1 pathway and its therapeutic potential arose out of Ono's Massachusetts collaboration. *See, e.g.,* JTX-0471, JTX-0450.0003. JTX-0142.00007.

[3] Defendants argue that Dana-Farber should have amended its complaint to "adequately plead jurisdiction or to add information it obtained through the documents it received from Pfizer," and claim that Dana-Faber "chose not to do so." Opp. at 11. In fact, Dana-Farber did include additional jurisdictional allegations in its amended complaint in January 2017, including information from the Pfizer document production. Dkt. 98 at ¶ 21. Nevertheless, Defendants continued to press Ono's jurisdictional motion and criticized Dana-Farber for amending its allegations. Dkt. 104 at 1, 3.

### C. Defendants Cannot Justify their Withholding of Relevant License Agreements and Deposition Testimony

Defendants attempt to minimize their unreasonable discovery conduct by characterizing their withholding of relevant deposition testimony of the named inventors as simply "an impasse on a few documents."[4] Opp. at 14. On the contrary, the documents that were the subject of Dana-Farber's motion to compel included the named inventors' deposition testimony in the Merck case and the Rule 30(b)(6) deposition testimony of company representatives, which were highly relevant to the claims and defenses in this action. *See* Brief at 10-11. Indeed, information in redacted passages was central to the inventorship issues in this case. *See id.* at 18.

Defendants mischaracterize their failure to produce the August 2018 license agreement with Regeneron, now claiming that they were waiting for Dana-Farber and Pfizer to modify the protective order to add an "Outside Counsel Only" provision. Opp. at 15. Defendants misleadingly omit that in January 2018 the parties explicitly agreed, at the behest of Defendants' counsel, to produce licensing agreements under an "Attorneys Eyes Only" designation in the situation "where dissemination is limited by the express terms of the agreement to outside counsel only." *See* Second Decl., Ex. 27. Defendants also omit that after they sought to modify the protective order in January 2019, mere weeks before trial, to produce an unidentified license agreement, Dana-Farber promptly agreed to Defendants' proposed amendment and did not withhold approval of the motion. *See id.*, Ex. 28.

---

[4] Defendants attempt to equate disputes over the timing of document productions with their refusal to produce entire categories of relevant documents. Moreover, as Dana-Farber pointed out at the time, in their first "rolling" document production, Defendants mainly produced publicly available file histories, publications, and court pleadings, while withholding all depositions and exhibits from the Merck case. Dana-Farber, by contrast, produced documents cited in its contention interrogatory responses before Defendants did the same. *See, e.g.*, Second Decl., Ex. 26.

5

    **D.**    **Defendants Have No Good-Faith Explanation for their Last-Minute Attempts to Delay Trial**

In their Opposition, Defendants ignore that the reason the trial delay associated with the Nobel Prize ceremony was "minimal" was because the Court rejected Defendants' attempt to claim that after December 2018 they were only "available March 11 through April 26 [2019]." Brief at 11; Decl. Ex. 16; Dkt 271 at 6:4-23.



At the least, Defendants' conduct further supports a finding of exceptional case. *See Octane Fitness*, 572 U.S. at 555 (2014) (conduct does not need to be sanctionable to support exceptional case finding).

## III.    DEFENDANTS CANNOT JUSTIFY THEIR UNREASONABLE LITIGATION POSITIONS

### A. Defendants' Challenge to the Scope of the Collaboration Was Objectively Unreasonable

Defendants argue that their attempts to contest the scope of the collaboration were "entirely supported by precedent." But legal precedent is not the issue here. The issue is whether it was reasonable for Defendants to assert that the three-way collaboration was merely intended to "characterize the ligand" for PD-1 in the face of overwhelming evidence that the collaboration was not so limited. Defendants were well aware that the three-way collaboration continued long after PD-L1 was "characterized." As the Court found, if the collaboration had been so limited, there would have been no reason for their continued "exchange [of] confidential experimental data," their four additional meetings over the course of the eighteen months, and the addition the PD-1/PD-L1 pathway to their collaborative drug development agreement. Order at 72. Defendants also wholly ignore Honjo's admission, in his December 2018 Nobel Lecture, that Dr. Freeman was one of his "major outside collaborators"—not on characterizing PD-L1—but on "cancer immunotherapy." JTX-828.

In their only effort to address the facts of the case, Defendants erroneously conflate the question of who first had a specific idea or who conducted an experiment with the scope of the collaboration. This red herring provides no reasonable justification for their argument that the collaboration somehow excluded confidential communications and meetings that continued over at least the next 18 months investigating the use of the PD-1/PD-L1 pathway to treat cancer.

### B. Defendants' Made Objectively Unreasonable Challenges to Corroboration

Defendants' arguments at trial on corroboration largely missed the point, and their Opposition makes the same error. For example, in her Closing, Defendants' counsel claimed that Freeman's presentation of his slides (JTX-0095) at the October 1999 meeting was insufficiently corroborated, Tr. 9-60, 61; *see* Def. Post-Trial Br, Dkt. 375 at 11. Yet there was no dispute that Freeman's contribution of the ***information*** contained in those slides was amply corroborated.

7

Among other things, the slides disclosed the amino acid sequence of PD-L1, described its homology to the B7 protein, and reported that the EST from which it was derived was discovered in a human ovarian tumor. Defendants did not deny that Freeman made these discoveries and shared them confidentially in the collaboration. That Freeman made these discoveries was corroborated not only by his slides, but also by his earlier BLAST search. JTX-0431. That Freeman shared them with Honjo before they were public was established by numerous communications, including drafts of the Freeman et al. paper circulated to Honjo early in 2000, as well as by admissions of Honjo and Defendants' expert Greene. Moreover, as the Court specifically found, Shibayma's notes from the October 1999 meeting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "contain information from Dr. Freeman's slides, specifically that 292 shares 20% of its amino acids with B7-1 and B7-2, Dr. Freeman discovered 292 from a human ovary tumor EST, and he had membrane and secreted versions of 292." Order at 69. In view of the extensive evidence, Defendants' attack on Freeman's October 1999 slides as "uncorroborated" was a wasteful diversion and objectively unreasonable.[6]

More generally, Defendants' arguments about corroboration applied an incorrect legal standard. They simply ignored that when the evidence includes more than merely the oral testimony of the putative inventor, inventorship is decided under on the rule of reason. The rule of reason is a "flexible . . . demand for independent evidence that, *as a whole*, makes credible the

---

[6] It was also objectively unreasonable for Defendants to challenge the authenticity of the slides when their counsel agreed, during Honjo's cross examination, that JTX-0095 was Freeman's slides. Tr. 4-60:23-25; 4-61:1-10. They now argue that Dana-Farber's counsel should have offered Honjo's deposition testimony identifying the slides into evidence. They ignore that at the time, Honjo was pressing to finish his testimony early to make a flight to Japan, and that Dana-Farber counsel was attempting in good faith to accommodate him by not wasting time on unnecessary cross examination. Tr. 4-193: 5-11. If Defendants are now suggesting that their counsel's interjection was meant to prevent Honjo from corroborating the slides in cross examination and should have been recognized as a trap, this would scarcely demonstrate Defendants' good faith.

testimony of the purported" joint inventor. *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1302 (Fed. Cir. 2016) (emphasis added). It is not necessary that every fact be independently corroborated. Defendants pressed numerous corroboration challenges that were objectively unreasonable, providing further grounds for finding this case exceptional.

C. **Defendants' Attempts to Justify Their Arguments About Freeman's and Wood's PD-L2 Contributions are Contrary to Undisputed Facts**

The discovery of PD-L2 was a critical element in three out of six patents-in-suit. It is undisputed that Honjo performed no experiment with PD-L2 before applying for patents that expressly recite PD-L2. Defendants have no excuse for claiming that Freeman contributed nothing significant to the '048, '999 and '094 patents. As the Court correctly found, Freeman and Wood determined that the PD-L2 molecule was a ligand for PD-1, generated its full-length sequence, showed that it inhibits the immune response when bound to PD-1, and found that it is expressed on certain tumor cells; they then provided "knowledge of the existence, structure and function of PD-L2" to Honjo. Order at 88-89.

Defendants' reliance on *Nartron* does not justify their baseless arguments. The *Nartron* court did not hold that dependent claims are to be ignored; it held on the facts of that case that the contribution of a single element to one dependent claim was not a significant contribution because that particular element was in the prior art and therefore "including it as part of the claimed invention was merely the basic exercise of ordinary skill in the art." *Nartron Corp. v. Schukra U.S.A., Inc.*, 558 F.3d 1352, 1357 (Fed. Cir. 2009). Defendants' argument that Freeman and Wood made no inventive contributions to the PD-L2 patents was objectively unreasonable.

D. **Defendants' Assertion of a Laches Defense Was Objectively Unreasonable**

Defendants' Opposition ignores the evidence in a misguided attempt to justify their continued assertion of a laches defense through trial. First, Defendants recite the presumption of laches even though Dana-Farber brought suit less than six years after the issuance of all six patents,

9

such that Defendants bore the burden of proving any unreasonable delay.  Second, Defendants fail to explain why they pressed their laches defense as to *all six patents in suit*—including the '899 patent that issued nearly eleven months *after* Dana-Farber filed its original complaint.  The Court found that Defendants provided "*no evidence*" of any unreasonable delay in connection with four of the patents and also failed to offer any evidence that the alleged "evidentiary prejudice" would have changed the outcome of the case as to any of the patents.  Order at 108-09 (emphasis added).

Finally, Defendants had no reasonable basis to argue "economic prejudice," having enjoyed $11.6 billion in sales of Opdivo in 2017 and 2018 alone based on business decisions made without regard to whether BMS had exclusive rights to the patents.  Tr. 6-71:7-25, 6-72: 1-4.  Strikingly, in their post-trial findings of fact, Defendants argued that they "*may* suffer material economic prejudice" in the future and represented that their "exclusive license rights would be *eradicated* if Dana-Farber were to prevail" with its inventorship claim.  Dkt. 374 at ¶163; *cf. A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (economic prejudice requires at minimum that defendant "*will* suffer" damage) (emphasis added).  ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████  Defendants' laches defense was objectively unreasonable.

## IV.   Conclusion

Any one of the above factors would warrant an exceptional case finding.  Taken together, the totality of circumstances lead to the conclusion that the Court should, in the exercise of discretion, find the case exceptional and award Dana-Farber its reasonable attorneys' fees and non-taxable costs.

                    DANA-FARBER CANCER INSTITUTE, INC.
                    By its attorneys,


                    */s/ Donald R. Ware*
                    Donald R. Ware (BBO No. 516260)
                    Barbara A. Fiacco (BBO No. 633618)
                    Sarah S. Burg (BBO No. 683245)
                    Emma S. Winer (BBO No. 693453)
                    Foley Hoag LLP
                    Seaport West
                    155 Seaport Boulevard
                    Boston, MA 02210-2600
                    (617) 832-1000 (telephone)
                    (617) 832-7000 (facsimile)


Dated:  August 13, 2019

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document, filed through the CM/ECF system, will be sent electronically to the registered participants of record as identified on the Notice of Electronic Filing on August 14, 2019.

                                                  */s/ Donald R. Ware*
                                                  Donald R. Ware